870 F.2d 1546
 10 U.S.P.Q.2d 1201
 WAHPETON CANVAS COMPANY, INC., Plaintiff-Appellant,
v.
FRONTIER, INC., Defendant/Cross-Appellant,
Steven C. Schmeichel and Charles M. Schmeichel d/b/a Agri
Cover, Defendants/Cross-Appellants.
 Nos. 88-1305, 88-1332 and 88-1333.
 United States Court of Appeals,
Federal Circuit.
 March 20, 1989.
Rehearing Denied May 18, 1989.
Suggestion for Rehearing In Banc Denied June 9, 1989.
 
 Clarence J. Fleming, Jones, Day, Reavis & Pogue, Chicago, Ill., argued for plaintiff-appellant. With him on the brief was Lester J. Savit. Also on the brief were John D. Kelly and Harlan G. Fuglesten, Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, N.D.
 Douglas J. Williams, Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., Minneapolis, Minn., argued for defendants/cross-appellants. With him on the brief was Robert W. Gutenkauf. Also on the brief was Russell M. Maring, of Fargo, N.D. Richard O. Bartz, Burd, Bartz & Gutenkauf, of Minneapolis, Minn., argued for defendants/cross-appellants. With him on the brief was Ronald H. McLean, Serkland, Lundberg, Erickson, Marcil & McLean, Fargo, N.D. R. Carl Moy, of Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., of Minneapolis, Minn., entered an appearance for defendants/cross-appellants.
 Before MARKEY, Chief Judge, SMITH and BISSELL, Circuit Judges.
 MARKEY, Chief Judge.
 
 
 1
 Wahpeton Canvas Company (Wahpeton) appeals from a judgment of the United States District Court for the District of North Dakota that Frontier, Inc. (Frontier), and Steven C. Schmeichel and Charles M. Schmeichel, d/b/a Agri Cover (Agri Cover), did not infringe Wahpeton's U.S. Patent No. Re. 31,746 ('746). Frontier cross-appeals a judgment entered on directed verdict on its counterclaims. Agri Cover filed a "cross-appeal" to challenge a ruling that certain evidence was inadmissible. We affirm in part, vacate in part, and remand.
 
 BACKGROUND
 Introduction
 
 2
 On April 20, 1982 Wahpeton sued Frontier for infringement of U.S. Patent No. 4,302,043 ('043). Frontier counterclaimed for unfair competition, attempted monopolization, and price discrimination. Facing issues of inventorship and validity, Wahpeton applied for reissue of the '043 patent on September 9, 1982. On October 4, 1983 Wahpeton sued Agri Cover for infringement of the '043 patent. The suits were consolidated on March 13, 1984. The reissue application became United States Patent No. Re. 31,746 ('746) on November 27, 1984. The '746 patent was then substituted for the '043 patent in the infringement suit.
 
 The Proceedings
 
 3
 Liability was tried to a jury required to return a special verdict under Rule 49(a), Fed.R.Civ.P. Trial began on August 10, 1987. The jury was asked to check "yes" or "no" alongside a series of questions, including a series of questions on infringement that gave just the claim number and did not identify the claim as "independent" or "dependent". On August 25th the jury returned answers to some questions and not to others. The jury's responses were: (1) Agri Cover had not infringed [independent] claims 1 or 11; (2) Agri Cover had not infringed [dependent] claims 2-4, 6, 9, 10, 12, 13, 16-19, 22-25, or 27-31; (3) it could not answer on whether Agri Cover had infringed [independent] claims 14 or 21; (4) it could not answer on whether Agri Cover had infringed [dependent] claims 7, 15, 20, 26, or 32; (5) Frontier had not infringed [independent] claims 1, 11, or 14; (6) Frontier had not infringed [dependent] claims 2-4, 6-10, 12, 13, 15-20, 22-25, or 27-32; (7) it could not answer on whether Frontier infringed claim 21; (8) the '746 patent was not inequitably procured;[1] (9) claims 1-4, 6-13 and 15-32 were not invalid; and (10) it could not answer on whether claim 14 was not invalid.
 
 
 4
 On July 6, 1987, the district court had ordered a separate trial on Frontier's counterclaims. That trial began on August 25, 1988, immediately following the infringement trial. Frontier closed its case on August 27th and the district court directed a verdict in favor of Wahpeton.
 
 
 5
 On September 3, 1987 Wahpeton moved "under Rules 50(b)" and Rule 59, Fed.R.Civ.P. though there were no answers to some questions to which its motions were directed, and for new trial. Recast for clarity, Wahpeton's motions were: (1) for judgment notwithstanding the verdict (JNOV) that Agri Cover and Frontier infringed all the claims the jury found non-infringed; (2) for judgment that Agri Cover infringed claims 7, 14, 15, 20, 21, 26, and 32 on which the jury did not decide; and (3) for judgment that Frontier infringed claim 21 on which the jury did not decide.
 
 
 6
 On September 9, 1987 Agri Cover moved "under Rule 50(b)"--actually for judgment--that it had not infringed the claims on which the jury did not decide. On September 14, 1987 Frontier moved "under Rule 50(b)"--actually for judgment--that it had not infringed claim 21.
 
 
 7
 In a February 8, 1988 telephone conference lasting 10 minutes, the district court said: (1) it found no infringement of claim 21 by Frontier because Frontier "went back to the old-fashioned hooks, which didn't look good on the truck"; (2) it found no infringement by Agri Cover of claims 7, 14, 15, 20, 21, 26, or 32 because "the jury reached a sufficient number of findings of no infringement to lead the court to the judgment and view" that there was no infringement of the claims on which the jury did not answer; (3) that the latter judgment accepted and was consistent with the findings of the jury to the extent made; and (4) Wahpeton "had a valid and enforceable patent." The district court characterized both accused devices as "inferior" to Wahpeton's cover.[2]
 
 
 8
 In an "ORDER ON POST-TRIAL MOTIONS" of February 11, 1988, the district court, without explanation, denied Wahpeton's motions and granted those of Agri Cover and Frontier.
 
 
 9
 On February 16, 1988, the district court entered this judgment:
 
 
 10
 IT IS ORDERED AND ADJUDGED pursuant to the Special Verdict filed August 25, 1987, all claims in plaintiff's U.S. Patent No. RE 31,746 are determined to be valid and enforceable; defendant Frontier, Inc.'s Roll-Tight roll-up tarp system does not infringe claims 1-4, 6-20, 22-25, and 27-31 of plaintiff's '746 patent; and defendants Steven C. Schmeichel and Charles M. Schmeichel's FASLOC roll-up tarp system does not infringe claims 1-4, 6, 9-13, 16-19, 22-25, and 27-31 of plaintiff's '746 patent.
 
 
 11
 IT IS FURTHER ORDERED pursuant to the Court's Order on Post Trial Motions filed February 11, 1988, that defendant Frontier, Inc.'s Roll-Tight roll-up tarp system does not infringe claim 21 of plaintiff's '746 patent; and defendants Steven C. Schmeichel and Charles M. Schmeichel's FASLOC roll-up tarp system does not infringe claims 7, 14, 15, 20, 21, 26 and 32 of plaintiff's '746 patent.
 
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 IT IS FURTHER ORDERED directed verdict be entered against the defendant Frontier, Inc. on its counterclaim against plaintiff.
 
 The Claimed And Accused Devices
 
 15
 The claimed device (Appendix, figure 1) and the accused devices of Agri Cover[3] and Frontier[4] are roll-up truck box covers. One side edge of the cover is attached to a longitudinal upper edge of the truck box and the other side, or free, edge of the cover is associated with a roll tube. A universal joint connects the roll tube to a crank turnable from the ground to roll and unroll the cover. An important element is a latching means, to secure the cover in place. Securing the crank locks the cover in place. An elastic tensioning cord keeps the cover taut.
 
 
 16
 The latching means disclosed in the '746 patent is a plate mounted along and angularly depending from the entire upper edge of the truck box opposite that to which the cover is attached. Latching is accomplished by turning the crank counterclockwise to unroll the cover over the truck box and plate until the roll tube dangles below the plate, then continuing to turn the crank counterclockwise and rerolling the tube in the same direction to reroll the cover onto the tube and thus to draw the tube upwardly until it securely engages the underside of the plate and is wedged between the plate and the truck wall. (Appendix, figures 2, 3).
 
 
 17
 Agri Cover's device uses straps and hooks. The free edge of the cover is not attached directly to the roll tube; straps are interposed instead between the cover and the roll tube. Latching is accomplished by unrolling the cover until the roll tube dangles on its straps below the hooks, and then continuing to turn the roll tube in the same direction to roll the straps onto the roll tube, thus drawing the tube upwardly until it engages within the hooks. (Appendix, figure 4).
 
 
 18
 Frontier's device employs an additional bar, hooks, and straps. The free edge of the cover is attached to a roll tube, but also attached to the roll tube are straps that are in turn attached to the additional bar. Latching is accomplished by unrolling the cover and continuing to roll the tube in the same direction to reroll the cover on the roll tube, the straps thus drawing the additional bar upwardly until it engages within the hooks. (Appendix, figures 5, 6).
 
 
 19
 The '746 Patent Claims and Disputed Limitations
 
 
 20
 There are 32 claims in the '746 patent, 19 having been added by reissue. All but claims 5 and 8 were asserted against Agri Cover. All but claims 5, 26, and 32 were asserted against Frontier. All claims are drawn to apparatus and none is drawn to method steps, e.g. reverse rolling.
 
 
 21
 The '746 patent has only four independent claims. The infringement dispute centered on three claim limitations (the disputed limitations): (1) the connection between the roll tube and cover, (2) the latching means, and (3) the wedging relationship between the roll tube and latching means. Those disputed limitations are emphasized in the following reproductions of the four independent claims.
 
 
 22
 1. A cover assembly for an elongated body having an elongated opening, comprising:
 
 
 23
 a flexible covering material having a longitudinal dimension approximately equal to the longitudinal dimension of said opening and having a lateral dimension slightly greater than the lateral dimension of said opening, said covering material having one longitudinal edge adapted for attachment to one longitudinal edge of said opening;
 
 
 24
 a bar member attached to the other longitudinal edge of said covering material;
 
 
 25
 crank means attached to said bar member for rolling said bar member transversely of said body for rolling or unrolling said covering material, and
 
 
 26
 an extension plate adapted for engagement to an opposite longitudinal edge of said opening, said plate having a surface extending away from said opening for holding said bar against said body when said bar is rolled between said surface and said body (emphasis added).
 
 
 27
 11. In combination, a covering apparatus for opened top bodies including a covering material connected to said body along one longitudinal side thereof; roll means for rolling said covering material laterally across said open top; and a latch plate attached along a second longitudinal [edge] side of said body, said latch plate being canted outwardly and downwardly from said second longitudinal edge of said body for providing an area for wedging said roll means (emphasis added).
 
 
 28
 14. A cover assembly for an elongated body defining an elongated opening, comprising:
 
 
 29
 a flexible covering material having a longitudinal dimension approximately corresponding to the longitudinal dimension of said opening and having a lateral dimension greater than the lateral dimension of said opening;
 
 
 30
 means attaching one longitudinal edge of said covering material adjacent one longitudinal edge of said opening;
 
 
 31
 a bar member connected to the covering material adjacent the other longitudinal edge of the covering material;
 
 
 32
 crank means operatively connected to one side of said bar member for rolling said bar member transversely of said body for rolling or unrolling said covering material;
 
 
 33
 resilient means, one end of said resilient means being attached to said bar member on the opposite side of said bar member, the other end of said resilient means being attached to said body, said resilient means extending over said body when said covering material is in a rolled condition to expose said opening, and said resilient means applying tension to said bar member during unrolling of the covering material as said opening is being covered, and;
 
 
 34
 latching means supported on said body on the side of said body opposite the side defining said one longitudinal edge of said opening, said latching means serving to secure said covering material in place when said opening is covered;
 
 
 35
 and wherein said crank means and said resilient means cooperate to secure said covering material relative to said latching means (emphasis added).
 
 
 36
 21. A cover assembly for an elongated body defining an elongated opening, comprising:
 
 
 37
 a flexible covering material having a longitudinal dimension approximately corresponding to the longitudinal dimension of said opening and having a lateral dimension greater than the lateral dimension of said opening;
 
 
 38
 means attaching one longitudinal edge of said covering material adjacent one longitudinal edge of said opening;
 
 
 39
 a bar member connected to the covering material adjacent the other longitudinal edge of the covering material;
 
 
 40
 crank means operatively connected to one side of said bar member for rolling said bar member transversely of said body for rolling or unrolling said covering material;
 
 
 41
 said crank means including an elongated operating shaft, said shaft extending downwardly from said bar member,
 
 
 42
 retainer means for said shaft mounted on said body for holding said shaft in position;
 
 
 43
 latching means supported on said body on the side of said body opposite the side defining said one longitudinal edge of said opening, said crank means operating to secure said covering material relative to said latching means to secure said covering material in place when said opening is covered,
 
 
 44
 and wherein subsequent movement of said shaft into holding relationship with said retainer means operates to apply tension to said bar member to tighten the bar member relative to said latching means and to thereby apply tension to said covering material (emphasis added).
 
 ISSUES[5]
 
 45
 1. Whether the district court erred in denying JNOV in respect of independent claims, and claims dependent thereon, on which the jury answered as part of the special verdict.
 
 
 46
 2. Whether the district court erred in denying JNOV in respect of claims on which the jury answered as part of the special verdict but which were dependent on claims on which the jury returned no answers.
 
 
 47
 3. Whether the district court erred in entering a judgment of non-infringement of the claims on which the jury did not return answers.
 
 
 48
 4. Whether the district court erred in directing a verdict for Wahpeton on Frontier's counterclaims.
 
 OPINION
 Introduction
 
 49
 The present is another appeal following a trial process plagued with a plethora of pusillanimous presentations. Thirty claims were asserted against one defendant's product and 29 against the other differing product; two claims against only the first; one claim against only the second; and one claim against neither. Though the trial judge, reflecting his complete candor and considerate courtesy, noted that this was his first patent case, admitted unfamiliarity with patent jargon, and praised counsel for their "patience", the appendix reflects not even a minimal concern of counsel for simplifying and clarifying the infringement issue. Many of Wahpeton's claims are a semantic mish-mash, containing terms not in the specification, adding numerous innocuous details differently labeled in dependent claims, and including the same structure twice in a single claim by changing its label.[6]
 
 
 50
 In Quaker City Gear Works, Inc. v. Skil Corp., 747 F.2d 1446, 1453 n. 6, 223 USPQ 1161, 1165 n. 6 (Fed.Cir.1984), this court noted the usefulness of Rule 49(a) in allowing a court to save the "good" part of a trial.[7] The special verdict here is comprised of jury answers on independent claims, on claims dependent on those claims, and on claims dependent on claims in respect of which the jury returned no answers. Also presented for review is the judgment entered on claims respecting which the jury did not answer, and the judgment entered on directed verdict on Frontier's counterclaims.
 
 
 51
 1. Denial of Wahpeton's Motion For JNOV In Respect Of Claims 1, 11, 14 and Their Dependent Claims
 
 
 52
 A motion for JNOV should be denied unless a judge, after viewing the evidence in the light most favorable to the non-movant, drawing all reasonable inferences therefrom in favor of the non-movant, and refraining from weighing the credibility of the evidence or substituting the court's view for that of the jury, concludes that judgment cannot be entered on the jury verdict. See Taylor v. Cochran, 830 F.2d 900, 902 (8th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1476, 99 L.Ed.2d 704 (1988); Rogers v. Allis-Chalmers Credit Corp., 679 F.2d 138, 140 (8th Cir.1982); Chicago Great Western Ry. v. Casura, 234 F.2d 441, 447 (8th Cir.1956). The district court did not articulate those decisional parameters here, but Wahpeton has not shown that their application would require either the district court or this court to so conclude.[8] Wahpeton submits a one-sided jury argument to this court, pointing only to its version of the evidence it submitted in trying to prove: (1) Agri Cover's hooks are the equivalent of the extension plate of claim 1 and latch plate of claim 11; (2) Frontier's hooks are the equivalent of the extension plate of claim 1, latch plate of claim 11, and latching means of claim 14; (3) the accused roll tubes are "wedged" in the hooks; and (4) straps of the accused devices are equivalent to the claimed attachment to the roll tube.
 
 
 53
 Evidently laboring under the delusion that this court is at liberty to substitute its selection of credible evidence for the selection made by the jury, Wahpeton simply disregards the substantial evidence presented to the jury that certain disputed limitations of claims 1, 11, and 14 and their equivalents were absent from the applicable accused devices. The jury had before it the prosecution history and testimony directed to: (1) the lack of equivalency of the hooks with the extension plate, latch plate, and latching means of claims 1, 11, and 14; (2) the absence of wedging action between the roll tube and hooks; and (3) the absence of the claimed attachment of the cover to the roll tube.
 
 
 54
 Whether judges of this court in the conduct of a bench trial might have found the fact of infringement of claims 1, 11, and 14, literally or under the doctrine of equivalents, is not the question. Fromson v. Western Litho Plate and Supply Co., 853 F.2d 1568, 1570, 7 USPQ2d 1606, 1608 (Fed.Cir.1988). In view of all the evidence, from which the jury had every right to select that to accept, we cannot say the jury's answers that Agri Cover had not infringed independent claims 1 and 11 and that Frontier had not infringed independent claims 1, 11 and 14, were not supported by substantial evidence.
 
 
 55
 Little need be said in treating the special verdict on claims dependent on claims 1, 11, and 14. The proper denial of JNOV respecting Agri Cover and claims 1 and 11 requires a denial respecting claims dependent on claims 1 or 11 (2-4, 6, 7, 9, 10, 12, and 13). The proper denial of JNOV respecting Frontier and claims 1, 11, and 14 requires a denial respecting claims dependent on those claims (2-4, 6-10, 12, 13, 15-20 and 27-31).[9]
 
 
 56
 2. Denial Of Wahpeton's Motion For JNOV In Respect Of Claims Dependent On Claims On Which Jury Did Not Answer
 
 
 57
 We next treat the special verdict of non-infringement by Agri Cover of nine claims (16-19, 27-31) dependent on claim 14 and four claims (22-25) dependent on claim 21, and non-infringement by Frontier of four claims (22-25) dependent on claim 21.[10] That the jury returned no answers on claims 14 and 21 re Agri Cover and claim 21 re Frontier would preclude answers of infringement on claims dependent thereon, hence the non-answers on claims 14 and 21 serve in this section as a means of identifying part of the special verdict and would be of moment only if the jury had found the dependent claims infringed.
 
 
 58
 The jury did not, of course, explain its answers on any of these dependent claims and the district court did not discuss them. Nor will we speculate on why the jury returned answers of non-infringement of these dependent claims. See Tennant v. Peoria & Pekin Union Ry., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944) (not function of court to search record for conflicting evidence to take case from jury).
 
 
 59
 The jury was properly instructed that a dependent claim includes all the limitations of the claim from which it depends, and must be presumed to have determined that the accused devices lacked one or more of the structural limitations of these claims as the devices and claims were presented through the witnesses, exhibits, and arguments of counsel. The district court, who saw and heard the same witnesses, exhibits, and arguments, denied Wahpeton's motion for JNOV on these claims. Wahpeton, who had the burden of proof, has not argued that the jury was not properly instructed, or was prejudiced, or that the trial was in any manner unfairly conducted. Whatever may be the correctness in the abstract of the jury's answers on each of claims 16-19, 22-25, and 27-31, it is not possible in the peculiar posture of this case for us now to say that the jury was required to find them infringed. Nor was it possible for the district court to grant Wahpeton's motion for JNOV, i.e., to issue a judgment that, read in their entireties as they must be, these claims were infringed.
 
 
 60
 Alleging "jury confusion" (while accepting no responsibility for any such confusion), Wahpeton improperly requests this appellate court to find infringement of, i.e. to overturn the jury's answers on, dependent claims 16-19, 22-25, and 27-31. It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed; hence Wahpeton's zeal for a determination of infringement of claims dependent on independent claims 14 and 21 is necessarily doomed by its failure to obtain the determination of infringement of those independent claims.
 
 
 61
 Wahpeton has not requested, and has shown no reason for, a retrial or a remand on these dependent claims. Nor do we deem such a retrial either compelled or justified. See Hartness Int'l, Inc. v. Simplimatic Eng'g Co., 819 F.2d 1100, 1108, 2 USPQ2d 1826, 1831 (Fed.Cir.1987) (remand unnecessary on infringement of dependent claim because damages would not be increased). If, in further proceedings, infringement of either claim 14 or claim 21 be found, Wahpeton may, for reasons best known to itself, be disappointed by the absence of what would be useless and unnecessary jury answers finding infringement of claims dependent on claims 14 or 21. If claims 14 and 21 be found not infringed, the present jury answers on these dependent claims would be compelled. For the source of any disappointment, Wahpeton has only to look to itself and its failure to obtain answers in this trial on independent claims 14 and 21.[11]
 
 
 62
 For the reasons set forth in sections 1 and 2 above, the denial of Wahpeton's motion for JNOV, and the consequent entry of judgment on the jury's special verdict, will be affirmed.
 
 
 63
 3. Entry of Judgment On The Order Respecting Claims On Which The Jury Did Not Decide
 
 
 64
 Judgment may be entered when a jury functioning under Rule 49(a) has returned answers to some but not all interrogatories if the answers returned are dispositive of the case. Skyway Aviation Corp. v. Minneapolis, Northfield & S. Ry., 326 F.2d 701, 704 (8th Cir.1964) (plaintiff's acts not proximate cause; absence of answer on negligence irrelevant); Quaker City Gear, 747 F.2d at 1453, 223 USPQ at 1165; Kissell v. Westinghouse Elec. Corp., 367 F.2d 375, 376 (1st Cir.1966); Black v. Riker-Maxson Corp., 401 F.Supp. 693, 696 (S.D.N.Y.1975); 9 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2510 (1971 & 1988 supp.). Here the answers returned, with two exceptions,[12] cannot on this record be accepted as resolving the questions not answered by the jury because differences in the claims make a contrary finding at least possible. Stated differently, a finding that a device does not infringe an independent claim on which the jury answered cannot in this case be said to compel a finding that that device does not infringe a different independent claim on which the jury did not answer.
 
 
 65
 Reference to the motions on unanswered interrogatories as "for JNOV" would be inapt. A special verdict is a compilation of answers returned. Quaker City, 747 F.2d at 1453, 223 USPQ at 1165. A motion "for JNOV" seeks a judgment "notwithstanding" that verdict. The motions on claims on which the jury did not answer were simply motions for judgment.[13]
 
 
 66
 The last sentence of Rule 50(b) reads: "If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."[14] Courts have held that in some circumstances judgment may be entered when the jury cannot arrive at a general verdict. Thompson v. Lillehei, 273 F.2d 376, 378 (8th Cir.1959); Noonan v. Midland Capital Corp., 453 F.2d 459, 463 (2d Cir.), cert. denied, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 333 (1972); O'Brien v. Thall, 283 F.2d 741, 742, 127 USPQ 296, 297 (2d Cir.1960); Hedgepeth v. Fruehauf Corp., 634 F.Supp. 93, 95 (S.D.Miss.1986), aff'd, 813 F.2d 405 (5th Cir.1987); Gonzalez v. Avon Prods., Inc., 648 F.Supp. 1404, 1405 (D.Del.1986), aff'd, 822 F.2d 53 (3d Cir.1987).
 
 
 67
 No Circuit has applied the last sentence of 50(b) to unanswered questions when a special verdict is formed of answers to only some questions.[15] The reason may be that "no verdict" (emphasis added) is problematic where a verdict was returned. To apply the sentence would require application of "no verdict" only to the unanswered questions.[16] In all events, the absence of jury answers raises a denial of jury trial question.
 
 
 68
 Whatever the terminological difficulties, we need not here decide the applicability of the last sentence of 50(b). Neither the judge nor the parties proceeded in accord with that sentence. The court proceeded on its own to supply its own answers to the unanswered inquiries and disposed of that part of the case by a judgment entered on the post-trial motions. That judgment has been entered and appealed from. The sole question remaining is whether that judgment was entered in error.
 
 
 69
 As was said in Union Pacific Railroad v. Bridal Veil Lumber Co., 219 F.2d 825, 832 (9th Cir.1955), cert. denied, 350 U.S. 981, 76 S.Ct. 466, 100 L.Ed. 849 (1956): "To do other than send the case back for a new trial when decision on a vital issue by the jury is missing would deprive the parties of the jury trial to which they are entitled constitutionally." The language "when decision on a vital issue by the jury is missing" states a standard not meaningfully different from the Eighth Circuit's remand-only-if-the-jury's-answers-are-dispositive standard expressed in Skyway Aviation, 326 F.2d at 704. Whether claim 14 or claim 21 was infringed is clearly a "vital" issue. The key here is whether Wahpeton has been improperly denied a jury trial on infringement by Agri Cover of claims 14, 15, 20, and 21 and on infringement by Frontier of claim 21.
 
 
 70
 The district court incorrectly reasoned that the jury answered on "a sufficient number of claims" to support the court's judgment of non-infringement on the remaining claims. Valid claims are not fungible; hence the question is not the number of claims involved in the special verdict, but whether the answers that comprise the special verdict are dispositive of the unanswered interrogatories on infringement of claims 14, 15, 20 and 21 by Agri Cover and of claim 21 by Frontier. The district court said nothing in its phone conversation or order about differences between the sets of claims on which the jury answered and the sets on which it did not, or about the doctrine of equivalents, or about any effect of prior art or prosecution history on application of that doctrine, or about any factors that might establish the dispositive nature of the jury's answers that comprised the special verdict.
 
 
 71
 The claim language differs in the two sets of claims. Claims 14 and 21 set forth a "latching means", a limitation broader than the "extension plate" of claim 1 and "latch plate" of claim 11. Neither claim 14 nor claim 21 requires a wedging means, whereas claim 1 calls for an extending surface "for holding said bar [member] against said body," and claim 11 calls for "an area for wedging." We make no comment, of course, on the effect of the prior art and prosecution history on the range of equivalents or scope to which claims 14 and 21 are entitled, and no comment on the infringement issue. We hold only that the jury's answers on claims 1 and 11 (Agri Cover) and 1, 11, and 14 (Frontier) are not so dispositive of the unanswered questions as to serve as the sole support for the district court's judgment on those unanswered questions. See Skyway Aviation, 326 F.2d at 704.
 
 
 72
 The district court's judgment on claims 14, 15, 20 and 21 respecting Agri Cover and claim 21 respecting Frontier will be vacated and the case will be remanded with instructions to grant a new trial on the issue of infringement of at least those claims.[17]
 
 4. Counterclaims
 
 73
 We have fully considered Frontier's cross-appeals on unfair competition under state law, attempted monopolization under Section 2 of the Sherman Act, and price discrimination under the Robinson-Patman Act. We conclude that the district court, for the reasons it cited, correctly entered a directed verdict on Frontier's claims.
 
 
 74
 Frontier offered no authority indicating that North Dakota law recognizes the tort of unfair competition as described by Frontier. Before us, Frontier cites only Biever, Drees & Nordell v. Coutts, 305 N.W.2d 33 (N.D.1981), which dealt with an entirely different cause of action (breach of trust). Frontier submitted no evidence of unlawful patent enforcement or other basis for a Sherman Act violation, and no evidence of price discrimination that would lessen, injure or destroy competition. Absent evidence sufficient to go to the jury, a directed verdict was required.
 
 CONCLUSION
 
 75
 For the foregoing reasons: (1) the denial of JNOV and judgment entered on the special verdict of non-infringement of claims 1-4, 6, 7, 9-13, 16-19 and 22-32 by Agri Cover and claims 1-4, 6-20 and 27-31 by Frontier are affirmed; (2) the judgment of non-infringement of claims 14, 15, 20 and 21 by Agri Cover and claim 21 by Frontier is vacated; (3) the judgment entered on the directed verdict on the counterclaims is affirmed; and (4) the case is remanded with instructions to grant a new trial, at least on the issue of infringement by Agri Cover of claims 14, 15, 20, and 21 and by Frontier of claim 21.
 
 COSTS
 
 76
 Each party shall bear its own costs.
 
 
 77
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 
 APPENDIX
 
 78
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 79
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 80
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 81
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 82
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 [1]
 Though we must take the appeal as it comes, Rule 49(a) provides for fact inquiries to the jury. Quaker City Gear Works, Inc. v. Skil Corp., 747 F.2d 1446, 1453, 223 USPQ 1161, 1165 (Fed.Cir.1984), cert. denied, 471 U.S. 1136, 105 S.Ct. 2676, 86 L.Ed.2d 694 (1985), and inequitable conduct is an equitable issue triable by the judge. Kingsdown Medical Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988) (in banc ); Gardco Mfg., Inc. v. Herst Lighting Co., 820 F.2d 1209, 1212, 2 USPQ2d 2015, 2018 (Fed.Cir.1987)
 
 
 [2]
 The appendix reflects no effort of counsel to point out that inferior infringement is still infringement. See Laitram Corp. v. Cambridge Wire Cloth Co., 863 F.2d 855, 859, 9 USPQ2d 1289, 1294 (Fed.Cir.1988)
 
 
 [3]
 Disclosed in United States Patent No. 4,505,512
 
 
 [4]
 Disclosed in United States Patent No. 4,691,957
 
 
 [5]
 Agri Cover "cross-appeals" the exclusion of two portions of DA 168 (video tape of a "Hawkeye Eagle" cover). In light of the district court's finding that the excluded portions show the cover operating in a manner contrary to its intended operation as admitted by Agri Cover's own witness, and in the absence of proof that it was ever so operated in the prior art, see Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 66, 43 S.Ct. 322, 329, 67 L.Ed. 523 (1923), we cannot say the exclusion was an abuse of discretion possibly affecting the result
 
 
 [6]
 Claim 14 includes "a bar member connected to the covering material adjacent the other longitudinal edge of the covering material"; claim 15 says "The invention as defined in claim 14 including engaging means attached to said other longitudinal edge of said covering material"; and claim 16 says, in its entirety, "The invention as defined in claim 15 wherein said engaging means comprises said bar member." Apart from the absence from the specification of "engaging means", claim 16 includes a "bar member" and an "engaging means" and the "engaging means comprises said bar member". Presentation of the infringement issue on an overgrown claims jungle to a jury and judge at trial, and to this court, is an unprofessional exercise not in clarification but in obfuscation
 
 
 [7]
 See Brown, Federal Special Verdicts: The Doubt Eliminator, 44 F.R.D. 338, 347-48 (1968)
 
 
 [8]
 Consideration of a motion for JNOV is not a matter unique to the law of patents. Consequently, we apply the law of the regional Circuit, here that of the United States Court of Appeals for the Eighth Circuit. Sjolund v. Musland, 847 F.2d 1573, 1576, 6 USPQ2d 2020, 2023 (Fed.Cir.1988)
 
 
 [9]
 One may infringe an independent claim and not infringe a claim dependent on that claim. The reverse is not true. One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim. Teledyne McCormick Selph v. United States, 558 F.2d 1000, 1004, 214 Ct.Cl. 672 (1977)
 
 
 [10]
 Because a reversal on appeal on one independent claim would give Wahpeton all it needs for victory, submission of the infringement issue on a plethora of dependent claims in Wahpeton's motion and appeal is difficult to understand. Infringement of an independent claim would result in the same damage award as would infringement of all claims dependent thereon and non-infringement of an independent claim carries with it non-infringement of all claims dependent thereon
 If validity were in issue, dependent claims might serve a useful role, for a necessarily narrower dependent claim may be valid when the claim from which it depends is not. Like many, if not most, dependent claims, most of those present here present minute structural details but were allowed because they contain all the limitations of allowed claims from which they depend.
 
 
 [11]
 The record reflects no effort of Wahpeton to seek re-submission to the jury of any interrogatory on which the jury returned no answer
 As indicated in Franki Foundation Co. v. Alger-Rau & Associates, Inc., 513 F.2d 581, 587 n. 10 (3d Cir.1975), the district court has discretion on remand to again submit these dependent claims to a jury; there must, however, be a good reason to deprive Agri Cover and Frontier of the answers of non-infringement they won on these claims. See 5A J. Moore & J. Lucas, Moore's Federal Practice p 49.03 (2d ed.1988).
 
 
 [12]
 The jury's answer of non-infringement by Agri Cover of claims 25 and 31 are dispositive of claims 26 and 32 which depend respectively from those claims and on which the jury did not answer with respect to Agri Cover. The district court's judgment of non-infringement by Agri Cover of claims 26 and 32 must therefore be affirmed
 
 
 [13]
 At the end of its phone conversation, the district court correctly noted that the discharge of the jury made the parties' "directed verdict" terminology inappropriate and stated: "It's the court's view that the proper procedure is to enter judgment in accordance with the motions of Frontier and Schmeichels on the issue of no infringement and I have done so." The court in its judgment, supra, "ADJUDGED" claims on which the jury answered, "ORDERED" judgment on claims on which the jury did not, and ordered the clerk to "enter final judgment in accordance with the verdict of the jury and this order."
 
 
 [14]
 In view of Rule 50(b)'s title, its last sentence is rhetorically misplaced, for if there is "no" verdict there is nothing for a judgment to "notwithstand"
 
 
 [15]
 The label "verdict" in Rule 49(a) is an unfortunate choice. Special verdicts are just jury answers to factual interrogatories. Rule 49(a) Fed.R.Civ.P. "Verdict" was apparently employed because returning verdicts is what juries do. Doubtless the drafters expected courts and counsel to distinguish between a general verdict, naked or accompanied by answers to interrogatories under Rule 49(b) (in returning either of which a jury finds the facts, applies the law as instructed, and designates the winning side), and a special verdict (in returning which a jury supplies only written answers to fact questions)
 
 
 [16]
 Two district courts, neither in the Eighth Circuit, have dealt generally with circumstances similar to those presented here. See Landis v. Delp, 327 F.Supp. 766 (E.D.Pa.1971); Sloane v. Powell, 69 F.Supp. 1016 (E.D.N.Y.1947)
 
 
 [17]
 In a post-trial colloquy, the district court expressed an intent to declare a mistrial (and presumably grant a new trial) in respect of answers not returned. That course was unquestionably open to the district court but the intent to follow it was apparently abandoned
 In Iacurci v. Lummus Co., 387 U.S. 86, 88, 87 S.Ct. 1423, 1424, 18 L.Ed.2d 581 (1967), the Court indicated that the district court was in the best position to decide on a new trial, but there the district court had not, as it did here, already considered and denied a motion for new trial.