**WESLEY JESSEN CORP., Plaintiff,**

v.

**COOPERVISION, INC., Defendant.**

**No. CV 01–3678 AHM.**

United States District Court,
C.D. California.

Aug. 20, 2002.

See also 2002 WL 480570.

Peter I. Ostroff, Edward G. Poplawski, Bridget J. Santorelli, Sidley Austin Brown & Wood, Los Angeles, CA, Robert F. Altherr, Jr., Banner & Witcoff, Washington, DC, Mark T. Banner, Rebecca P. Rokos, Timothy C. Meece, Thomas K. Pratt, Robert H. Resis, Jason S. Shull, J. Pieter Van Es, Banner & Witcoff, Chicago, IL, for Plaintiff.

Bruce D. Kuyper, Michael Jon Lawrence, David J. Schindler, Latham & Watkins, Los Angeles, CA, Thomas J. Wimbiscus, Edward W. Remus, Anthony E. Dowell, Christopher V. Carani, Geoffrey A. Baker, McAndrews Held & Malloy, Chicago, IL, for Defendant.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF UNITED STATES PATENT NO. 5,414,477

MATZ, District Judge.

### INTRODUCTION

This matter is before the Court on Plaintiff Wesley Jessen Corp.'s (alternatively, "Plaintiff" or "Wesley Jessen") Motion for Summary Judgment. Plaintiff moves for summary judgment on the issue of Defendant Coopervision, Inc.'s (alternatively, "Defendant" or "Coopervision") alleged infringement of United States Patent No. 5,414,477 (" '477 patent").[1] Plaintiff contends it is entitled to summary judgment on the issue of infringement because the Court has adopted its claim construction of the '477 patent and the testimony of Defendant's own witnesses demonstrate that Coopervision's Frequency Colors and Expressions lenses (collectively, "Coopervision's lenses," "Defendant's lenses" or "accused lenses") satisfy each and every limitation of claims 1, 13, 15, 22, 23 and 25 of the '477 patent.[2]

In opposition, Defendant makes only two arguments. First, Coopervision argues that, unlike the lenses described in each of the claims of the '477 patent, its accused lenses do not have an "uninterrupted jagged border" between the two colors printed on the lens. (Opp'n. at 3). Coopervision contends its lenses lack an "uninterrupted jagged border" because there are several gaps or holes in the border zone of each of the accused lenses. Second, Defendant argues that, unlike the '477 patent, its Hazel colored lenses do not demonstrate a noticeable change of shade between the inner and outer portions of the lenses. (*Id.*). According to Defendant, the colors of the inner and outer portions of its Hazel lens are too similar to produce the noticeable change in shade required by the '477 patent.

Defendant does not argue that its lenses fail to contain the remaining limitations of claims 1, 13, 15, 22, 23 and 25 of the '477 patent. The Court construes this as a concession by Defendant that its lenses do contain the remaining elements of those claims. The Court will not comb the record for a potential genuine issue that was not raised by Defendant in its opposition brief.

### DISCUSSION

### I. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v.*

---

1. Plaintiff's motion concerns Count I of its Amended Complaint for Patent Infringement ("FAC"). That claim alleges that Defendant has sold contact lenses in the United States that infringe the '477 patent. (FAC ¶ 20). The Court construed the terms of the '477 patent in its March 14, 2002 *Markman* Order, which is hereby incorporated by reference. THE COURT HEREBY CORRECTS PREVIOUSLY–UNDETECTED "TYPOS" in that *Markman* Order. Specifically, at lines 10, 16, 18 and 19 of page two (and perhaps elsewhere, too) that order refers to the " '447" patent when it should have read the " '477" patent.

2. Defendant's 30(b)(6) witness, Richard Ward, testified that the lenses sold by Coopervision under the name "Frequency Colors" are the same as those sold by the company under the name "Expressions." (Shull Decl., Ex. E at 86).

*Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248, 106 S.Ct. 2505. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transportation Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir.2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 806, 119 S.Ct. 1597, 1603, 143 L.Ed.2d 966 (1999) (*citing Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." F.R. Civ. P. 56(e).

Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. Id.; *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 1551–52, 143 L.Ed.2d 731 (1999) (*citing Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

■ To establish patent infringement, every limitation set forth in a patent claim must be found in an accused product exactly or by a substantial equivalent. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533,1535 (Fed.Cir.1991). Where the parties do not dispute the relevant facts regarding the accused product but disagree over whether that product infringes the claims of the plaintiff's patent, the question of literal infringement collapses to one of claim construction and is proper for summary judgment. *Johnson Worldwide Assoc. v. Zebco Corp.*, 175 F.3d 985, 988–89 (Fed.Cir.1999) (*citing Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed.Cir.1996)).

## II. COOPERVISION'S LENSES SATISFY THE "JAGGED BORDER" LIMITATION OF CLAIMS ONE AND THIRTEEN OF THE '477 PATENT.

■ Defendant's primary argument in opposition to Plaintiff's motion is that none of its accused lenses has the "uninterrupted jagged border" limitation present in claims one and thirteen of the '477 patent. Defendant's argument concerns the following language, which appears in those claims:

> [S]aid first portion is located generally on the outside of said iris section and said section portion is located generally on the inside of said iris section, and a *jagged border separates* said first and second portions, wherein the *minimum distance of said jagged border* from the outer perimeter of said iris section is about 5% to about 45% of the radial width of said iris section, and the *maximum distance of said jagged border* from the outer perimeter of said iris section is from about 45% to about 95% of the radial width of said iris section...

(Shull Decl., Ex. B at 34) (emphasis added).[3]

In its *Markman* order, the Court interpreted this language to require that there be a jagged border or border zone where there takes place a "noticeable change of shade" between elements of the first shade and elements of the second shade. (March 14, 2002 Order at 10). The "jagged border" does not rigidly separate all elements of the first shade from those of the second shade. (*Id.* at 9–10). Rather, elements of the first shade may appear throughout the iris, so long as a "noticeable change of shade" takes place at the border. (*Id.* at 10). Pursuant to Defendant's unopposed contention, the Court also found that the border must be an "uninterrupted" line or zone. (*Id.* at 10). In other words, the '477 patent did not allow for a break in the border. "[R]ather, at some point throughout the iris, the jagged border must delineate a noticeable change in shade between the outer and inner portions of the iris." (*Id.*).

Coopervision first argues that Plaintiff has produced no evidence that the accused lenses contain an uninterrupted jagged border. (Opp'n. at 6). In addition, Coopervision contends that the declarations of Kent Bell ("Bell") and Dr. Rick Silver ("Dr. Silver") establish a genuine issue regarding whether its lenses contain an "uninterrupted" jagged border. Bell, a graphic designer and patent illustrator for the law firm representing Defendant, produced several illustrations of the accused lenses by using exhibits submitted by Plaintiff in connection with its preliminary injunction motion and magnifying those exhibits by 600%. (Bell Decl. ¶¶ 1, 4–6, Exs. 1A–4D). According to Defendant, Bell's images demonstrate that each of the accused lenses contains several gaps or holes in the jagged border and thus does not contain the "uninterrupted" border required by the '477 patent. (Opp'n. at 7).

Dr. Silver, Coopervision's expert witness, bases his testimony on a review of Bell's images. (Silver Decl. ¶ 10). Dr. Silver states that, to a person of ordinary skill in the art, the accused lenses do not include an "uninterrupted jagged border" because there are several "breaks, gaps or holes" in the border, so that a radian can run from the center of the pupil to the

---

3. As both sides acknowledge, each of claims 15, 22, 23 and 25 is dependent on either claims one or thirteen. A dependent claim contains all of the limitations of the claim on which it depends. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 fn. 9 (Fed.Cir.1989). Thus, any limitation in claims one or thirteen is also present in claims 15, 22, 23 and 25.

outer perimeter of the iris section without intersecting the "jagged border." (Silver Decl. ¶ 14).

As an initial matter, the Court rejects Defendant's contention that Plaintiff has failed to produce evidence that Coopervision's lenses have the type of "uninterrupted jagged border" contemplated by the '477 patent. Defendant's Rule 30(b)(6) witness, Richard Ward ("Ward"), testified that Coopervision's aqua lens contained the colors light blue and yellowish-brown within the colored iris section. (Shull Supp Decl., Ex. A 16–18, 40). In addition, Ward testified that there was not a "precise line" between the two shades, but that there was an area where a "noticeable change of color" occurred. (*Id.* at 17–18).[4] As the Court stated in its *Markman* order, this is all that is required by the "jagged border" limitation—that there take place a "noticeable change of shade" at an unbroken border "line or zone." (March 14, 2002 Order at 10). As such, the Court finds Plaintiff has produced evidence that Defendant's lenses contain this claim limitation of the '477 patent.

In addition, the Court finds that Coopervision has not identified a genuine factual issue regarding whether its lenses satisfy the "jagged border" limitation of the '477 patent. Coopervision's essential position is that its lenses do not infringe the "uninterrupted" border limitation of claims one and thirteen because, when magnified by 600%, several tiny gaps or holes are visible in the border of the accused lenses. That is, within the circumference of the "jagged border" there are gaps that appear in the second shade, so as to permit one to draw

a line from the pupil to the first shade without crossing elements of the second shade. In the exhibits, these gaps are shown, for example, as non-opaque or clear elongated strands. (Silver Decl., Ex. 2 at 14).

Unfortunately for Coopervision, it did not argue in its *Markman* brief that to be "uninterrupted" the border disclosed by the '477 patent could not contain microscopic holes or gaps. Rather, in arguing that breaks in the border zone would not read on the '477 patent, Coopervision clearly was referring only to breaks that an objective observer would have to regard as substantial. (Coopervision's Memorandum on Claim Construction at 24–25). That was the proposition that Plaintiff did not contest. Coopervision's *Markman* brief presented illustrations of the type of large gaps in the border that it argued would be impermissible under the '477 patent.[5] Those illustrations are completely different than the images on which Coopervision currently relies. Furthermore, and perhaps more significant to the present issue, Defendant's *Markman* brief also presented an illustration of an "uninterrupted" border.[6] That illustration showed a continuous border that, when examined closely, contained precisely the type of tiny gaps or holes Coopervision now argues are impermissible under the '477 patent, illustrating that Defendant's current position is contrived and cannot create a genuine issue of fact.

Furthermore, Coopervision's present position is too literal an interpretation of the Court's *Markman* order. The Court held

---

4. Notwithstanding Defendant's argument to the contrary, Ward's testimony regarding the aqua lens is applicable to all accused Coopervision lenses because the evidence establishes that all the lenses at issue are made by the same process using the same pattern. (Statement of Genuine Issues ("SGI") ¶ 15; Shull Supp. Decl., Ex. A at 6–7, 8–11).

5. A black and white copy of Coopervision's colored illustrations is attached to this order as Exhibit A.

6. A copy of this illustration is attached to this order as Exhibit B.

only that the "jagged border" must be unbroken, which is akin to stating that the border must be "continuous." A border can be continuous even if it is permeable. To analogize, one can accurately describe a large meadow of grass as an "unbroken carpet of green." However, in actuality, between each blade of grass in the meadow there is a tiny gap. This does not make the meadow "interrupted." By contrast, if there were a pond in the middle of the meadow, the meadow clearly would not be an "unbroken carpet of green." At the *Markman* hearing, Coopervision's position regarding the "jagged border" was analogous to stating that there could not be a pond in the meadow. Its current position is that the "uninterrupted jagged border" limitation on the '477 patent does not contemplate gaps between the individual blades of grass.

Moreover, the Court's *Markman* order must be read in the context of the preferred embodiment of the '477 patent. In its preferred embodiment, the '477 pattern provides for the iris section to be covered by an "intermittent" pattern of colored dots that leaves "a substantial portion of the iris section within the interstices of the pattern non-opaque." (Shull Decl., Ex. B at 31). The jagged border is then produced by overlaying the first pattern of dots with a second pattern of dots of a different shade. (*Id.*). The use of an intermittent pattern of dots necessarily entails that some tiny gaps or holes will be present throughout the iris, including in the border zone. In fact, Figure 7 of the '477 patent illustrates this precise point because it shows several elongated, non-opaque gaps in the jagged border. (Shull Decl., Ex. B at 26). Thus, Coopervision's hyper-technical interpretation of the Court's *Markman* order would result in

the '477 patent excluding its own preferred embodiment. As the Federal Circuit has held, "[s]uch an interpretation is rarely, if ever correct." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed.Cir. 1996).

For the reasons stated above, Coopervision has failed to create a genuine issue as to whether its lenses satisfy the "jagged border" limitation of claims one and thirteen of the '477 patent. According to Coopervision's own argument, its accused lenses contain a continuous "jagged border" with only microscopic gaps or holes. As such, under the proper application of the Court's March 14, 2002 *Markman* order, the accused lenses infringe the '477 patent and summary judgment on the issue is appropriate.

## III. COOPERVISION HAS FAILED TO CREATE A GENUINE ISSUE AS TO WHETHER ITS HAZEL LENSES CONTAIN TWO NOTICEABLY DIFFERENT SHADES IN THE IRIS SECTION.

■ Coopervision also argues that Plaintiff's motion should be denied because there is a triable issue of fact concerning whether there is a noticeable difference in color between the first and second portions of its Hazel lens. (Opp'n. at 9).[7] Specifically, Defendant argues that the inner portion of its Hazel lens is not noticeably different in color from the outer portion and thus the Hazel lens does not satisfy the following limitation in claims one and thirteen:

Wherein a first portion of the elements of said pattern are of a first shade and a second portion of the elements of said

---

**7.** Coopervision's lenses are made in aqua, blue, gray, hazel, green and brown. (Shull Decl., Ex. E at 81–83). The lenses are sold in

the United States in all colors except brown. (*Id.* at 83).

pattern are of a second shade different from said first shade...

(Shull Decl., Ex. B at 34).

In support of this argument, Coopervision relies solely on an illustration of its Hazel lens created by Bell. (Bell Decl., Ex. 4A). Defendant argues that the illustration, standing alone, creates a triable issue of fact regarding whether the inner and outer portions of the Hazel lens are of "a second shade different from said first shade." (Opp'n. at 10).

The Court finds Coopervision's argument to lack merit. As an initial matter, the Court finds that the illustration in Exhibit 4A, standing alone, does not create a genuine issue as to whether the inner portion of Defendant's Hazel lens is of a different shade than that located predominantly on the outer portion of the lens. "Shade" by its very nature contemplates something different than "color." The differences between shades are not as stark as the differences between colors. Indeed, the differences can be subtle. Here, the illustration in Exhibit 4A shows two noticeably different shades, one located primarily on the inner portion of the lens and one located primarily on the outer portion of the lens. Furthermore, Ward testified that Coopervision's Hazel lens was produced using two different colors—Hazel and yellow-brown. (Shull Supp. Decl., Ex. A at 28). In addition, Ward testified that, "in most people's belief," hazel and yellowish-brown will appear to be different colors. (*Id.* at 36). Ward's testimony is sup-

ported, not contradicted, by the exhibit produced by Bell, which appears to show two noticeably different shades on the lens. As such, Coopervision has failed to create a genuine issue on this point.

At the hearing on this motion, Defendant's counsel stressed that the foregoing paragraph is legally unsound because another observer could perceive Exhibit 4A as lacking any differences in shade. Such an argument is unpersuasive because it proves too much. If the presence of a genuine issue of fact automatically arises from the truism that human beings have differing sensory perceptions, summary judgment could never be appropriate. For example, according to Defendant's argument, in a civil rights action where the claim is excessive force, the Court never could grant summary judgment to the defendant-officer, no matter how uncorroborated is the plaintiff's claim, no matter how many eyewitnesses testify to the absence of force, and despite what a video whose authenticity and accuracy is not disputed demonstrates (that the defendant arrested the plaintiff without using force) merely because, theoretically, some juror may view the officer's conduct as excessive. That is not the law on summary judgment and Defendant cannot manufacture a genuine issue based on this argument.

## CONCLUSION

For the foregoing reasons, and good cause appearing therefor, Plaintiff's Motion for Summary Judgment of Infringement of the '477 patent is GRANTED.[8]

---

8. Docket No. 87.