**MALLINCKRODT INC. et al.,**

v.

**MASIMO CORPORATION et al.,**

**This Document Relates to All Actions**

**No. CV 00–06506 MRP (AJWx).**

United States District Court,
C.D. California.

Sept. 22, 2003.

Craig N. Hentschel, Arnold & Porter, Los Angeles, CA, Robert C. Morgan, Anthony A. Pastor, Scott Howard Kaliko, New York City, Stephen C. Neal, Linda Anne Fritsch Callison, Cooley Godward, Nicola A. Pisano, Kevin P. B. Johnson, Adel Aali, Palo Alto, CA, Jack B. Blumenfeld, Morris Nichols Arsht & Tunnell, Wilmington, DE, for plaintiffs.

Joseph R. Re, James F. Lesniak, Stephen C. Jensen, Stephen C. Jensen, Joseph S. Cianfrani, Irfan A. Lateef, Knobbe Martens Olson & Bear, Irvine, CA, Gerard M. O'Rourke, Connolly Bove Lodge & Hutz, Wilmington, DE, Karen Vogel Weil,

Knobbe Martens Olson & Bear, Los Angeles, CA, for defendants.

James F. Lesniak, Stephen C. Jensen, Jon W. Gurka, Joseph S. Cianfrani, Irfan A. Lateef, Knobbe Martens Olson & Bear, Irvine, CA, Gerard M O'Rourke, Connolly Bove Lodge & Hutz, Wilmington, DE, for counter-claimants.

Linda Anne Fritsch Callison, Cooley Godward, Adel Aali, Fish & Neave, Palo Alto, CA, Jack B. Blumenfeld, Morris Nichols Arsht & Tunnell, Wilmington, DE, for counter-defendants.

## MEMORANDUM OF DECISION AND ORDER RE:

**Masimo's Motion for Summary Judgment of Noninfringement of the Asserted Claims of U.S. Patent No. 5,807,247 and U.S. Patent No. 5,078,136**

PFAELZER, District Judge.

### INTRODUCTION

In this patent infringement suit, Plaintiffs and Counterdefendants Mallinckrodt Inc. and Nellcor Puritan Bennett, Inc. (collectively, "Nellcor") assert six separate patents against Defendant and Counterclaimant Masimo Corp. ("Masimo"). The Court conducted a Claim Construction hearing regarding certain disputed claim terms, and on February 25, 2003, the Court issued its Memorandum of Decision and Order re: Claim Construction ("Claim Construction Order"). Masimo then filed motions for summary judgment of noninfringement for two of the asserted patents, namely U.S. Patent No. 5,807,247 ("the '247 patent") and U.S. Patent No. 5,078,136 ("the '136 patent"). The motions came on for hearing on August 25, 2003. The Court heard oral argument and took the motions under submission. Having considered all of the submitted papers as well as the oral argument, the Court's decision is set forth below.

### LEGAL BACKGROUND

#### I. Infringement

■ Infringement is a two step analysis. First, the terms of the claim are construed by the court, and then the claims are to be compared to the accused product. *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc). Literal infringement requires the accused product to have each element of the claim at issue. *Charles Greiner & Co. v. Mari-Med Mfg., Inc.*, 962 F.2d 1031, 1037 (Fed.Cir.1992). Accordingly, the absence of a single claim limitation in the accused product precludes a finding of literal infringement. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed.Cir.1991).

■ Even if the accused product does not literally possess each limitation of the claim, the product may still infringe if there is equivalence between the elements of the accused product and the claimed elements. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997).

#### II. Summary Judgment

Summary judgment is appropriate when the moving party has demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Under the summary judgment standard, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505. For a motion for summary judgment of noninfringement,

the Court views the evidence in light of the preponderance of the evidence standard that would inhere at trial. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Biovail Corp. Int'l v. Andrx Pharm., Inc.,* 239 F.3d 1297, 1302 (Fed.Cir.2001) ("Literal infringement requires a patentee to prove by a preponderance of the evidence that every limitation of the asserted claim is literally met by the allegedly infringing device.").

## ANALYSIS

### I. *The '274 Patent*

Nellcor accuses Masimo of infringing or inducing infringement of Claims 1, 2, 6, 10, 13, 17, 21 and 22 of the '274 patent ("the asserted '274 patent claims"). Claims 2, 6, and 10 depend from, and include the limitations of, independent Claim 1. Claims 17, 21, and 22 depend from, and include the limitations of, independent Claim 13.

### A. *Claim 1*

Masimo argues that Claim 1 requires that the claimed signal transformer reside on the sensor probe, and because there is no signal transformer on the patient sensor of the Radical System, Masimo does not infringe Claim 1. (Def. Masimo Corp.'s Mem. of P. & A. in Supp. of its Mot. for Summ. J. of Non-infringement of U.S. Patent No. 5,8076,247 ("'247 Patent Mot.") at 13.) Nellcor argues that the Radical Sys-

tem "as a whole" constitutes a sensor probe and that the Radical System includes the claimed signal transformer. (Nellcor's Opp'n to Masimo's Mot. for Summ. J. of Non-infringement of U.S. Patent No. 5,807,247 ("'247 Patent Opp'n") at 20.)

### 1. *Claim Construction*

Claim 1 claims a "sensor probe" comprising, *inter alia,* "a signal transformer for manipulating" the first probe signal.[1] ('247 Patent, Claim 1.) In the Claim Construction Order, the Court held that the phrase "sensor probe" means "a group of interrelated or interacting components directed towards providing information to a pulse oximeter required to compute a blood parameter *which is attached to the tissue sample in some manner.*" Claim Construction Order at 18 (emphasis added). "The probe itself may comprise components other than those directed towards emitting and detecting light, but those components must reside on the sensor probe itself." *Id.*

Here, Claim 1 claims only a "sensor probe" which, as discussed above, must be construed to mean only the components attached to an appendage of the patient. Thus, the plain text of the claim only covers a signal transformer residing on the sensor probe and does not cover a signal transformer residing on other non-at-

---

1. Claim 1 reads as follows:
    A sensor probe operable to transmit light of a first wavelength for scattering by a tissue sample and to generate a first probe signal in response thereto, the sensor probe being for use with a meter, the meter being operable to receive a meter signal representative of light of a second wavelength scattered by the tissue sample and to calculate a blood parameter from the meter signal using coefficients based at least in part on a value of the second wavelength, the sensor probe comprising:
    at least one source of light for transmitting the light of the first wavelength for scattering by the tissue sample;

at least one detector for detecting the light of the first wavelength scattered by the tissue sample and generating the first probe signal in response thereto; and
    a signal transformer for manipulating the first probe signal thereby generating a transformed signal having a predetermined mathematical relationship to the first probe signal, the transformed signal being used by the meter to calculate the blood parameter using the coefficients based at least in part on the value of the second wavelength.

tached components, such as the meter or the adapter module.

In further support of this construction, examination of the '247 patent reveals that the sensor probe is a distinct component, and that the meter and adapter module cannot be deemed a part of the "sensor probe." The specification of the '247 patent states that the sensor probe and any external machinery connected to it are distinct components:

> The invention described herein may be configured in a variety of ways as set forth below in the detailed descriptions of the various specific embodiments. For example, the signal transformer may be included as part of the sensor probe thereby making the sensor probe compatible with more than one type of meter. Alternatively, the signal transformer may be included as part of the meter thereby making the meter compatible with more than one type of sensor probe. Finally, the signal transformer may be part of an adapter module between the sensor probe and the meter.

('247 Patent, Col. 3, Ln. 61 to Col. 4, Ln. 3.) Consistent with this view, Figures 3, 4, and 5 show various embodiments in which the signal transformer is located on the sensor probe, the adapter module, and the meter, respectively. ('247 Patent, Figs. 3, 4, and 5.) Thus, based on the specification, the signal transformer may be included as part of the sensor probe, the meter, or the adapter module; there is, however, no support for the proposition that either the meter or the adapter module is part of the sensor probe. (See also, '247 Patent, Col. 7, Lns. 62–66 ("[I]n this embodiment, LED and current translation circuitry 404 and 412 are contained in adapter module 418 which is separate from and disposed between oximeter 410 and sensor probe 402.") (emphasis added).)

### 2. Comparison of Accused Device with Claim 1

#### a. Literal Infringement

■ Nellcor alleges that Masimo's Radical System meets the limitations of the asserted claims of the '247 patent. The Radical System includes a patient sensor, a Radical pulse oximeter, a patient cable connecting the patient sensor to the Radical pulse oximeter, a SatShare docking station, and a SatShare interface cable connecting the SatShare docking station to the hospitals' patient monitor. (Nellcor's Stmt. of Gen. Issues in Supp. of Nellcor's Opp'n to Masimo's Mot. for Summ. J. of U.S. Patent No. 5,807,247 at 1.)

Nellcor argues that while the Court's Claim Construction Order held that the signal transformer must be "on" the sensor probe, such a holding did not mean that the Radical System, "as a whole," could not constitute a "sensor probe." ('247 Patent Opp'n at 1–2.) Nellcor argues that *the Radical System* "takes the [incoming signal] and manipulates it to generate a transformed signal that simulates a signal from a Nellcor sensor." (*Id.* at 7.) In particular, Nellcor alleges that the claimed "signal transformer" is in "the signal processing software and hardware of the Radical and docking station." (*Id.* at 20.) As noted above, however, the Court rejects the argument that the entire Radical System may be considered a sensor probe and instead holds that the sensor probe is a distinct component and does not include other components of the Radical System, such as the Radical pulse oximeter or the SatShare docking station.[2] Thus, the Rad-

---

2. Nellcor defines the Radical System as including the patient sensor ('247 Patent Opp'n at 6); however, Nellcor also refers to the patient sensors as components separate from the Radical System (*Id.* at 7–8 ("Masimo's Radial System take the incoming red LNOP signal and manipulates it;" "[t]he photodetec-

ical System, as a whole, cannot constitute a "sensor probe."

Furthermore, Nellcor does not allege that there is a signal transformer located on Masimo's patient sensors.[3] Moreover, while Nellcor does not identify which components of the Radical System perform the functions of the "signal transformer," Nellcor makes it clear that such functions are *not* performed by the patient sensor, but instead are performed using signals that come from the patient sensor. ('247 Patent Opp'n at 6–7) ("The Masimo Radical System manipulates the LNOP sensor signal to generate transformed signals that simulate a Nellcor sensor signal;" "[t]he photodetector in the LNOP sensor generates signals based on the red and infrared light transmitted through the patient's tissue and sends these LNOP and red and infrared signals to the Radical;" "Masimo's Radical System takes the incoming red LNOP signal and manipulates it to generate a transformed signal....".) Accordingly, it is clear that Masimo's patient sensor does not include the claimed signal transformer.

### b. *Doctrine of Equivalents*

Although Masimo does not literally infringe Claim 1, the Court next determines whether the doctrine of equivalents precludes a finding of noninfringement.[4]

Even if the accused product does not literally possess each limitation of the claim, the product may still infringe if there is equivalence between the elements of the accused product and the claimed elements. *Warner–Jenkinson*, 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Although equivalence is a factual matter normally reserved for a fact finder, the trial court should grant summary judgment in any case where no reasonable fact finder could find equivalence. *See id.* at 39 n. 8, 117 S.Ct. 1040.

The doctrine of equivalents may not be used to "recover subject matter that has been surrendered." *K–2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1367 (Fed. Cir.1999). "[P]rosecution history estoppel will exclude from the doctrine of equivalents any subject matter that was, by amendment or argument during prosecution, relinquished." *Id.* Furthermore, "particular subject matter disclosed in the patent specification but not claimed is deemed to have been surrendered." *Id.* at 1368. Whether such matter has been surrendered is a question of law. *Id.*

The '247 patent prosecution history reveals that Nellcor surrendered apparatus claims covering embodiments in which the signal transformer was located on the adapter module and on the meter. The original application for the '247 patent included Claims 1 through 52.[5] The appara-

---

tor in the LNOP sensor generates signals based on the red and infrared light transmitted through the patient's tissue and sends these LNOP and red and infrared signals to the Radical;" "the Radical System receives the LNOP signal, digitizes ad filters that signal").) In addition, Nellcor makes references to "the Radical" such that it is not clear whether Nellcor is referring to the Radical System or the Radical pulse oximeter. Even though Nellcor's use of "Radical" and "Radical System" is inconsistent, it is clear that the sensor probe is a separate component from the component(s) that perform the signal transformer functions.

3. Nellcor's citation to Dr. Stone's Declaration is of no assistance as he states only that "[t]he Radical System contains a signal transformer" and does not provide any information as to where the signal transformer resides on the Radical System. (Decl. of Dr. Robert T. Stone in Supp. of Nellcor's Opp'n to Masimo's Mot. for Summ. J. of Non–Infringement of the '247 Patent Ex. 2 at 29.)

4. Nellcor does not appear to argue that the doctrine of equivalents applies to Claim 1.

5. Claims 1 to 12 were apparatus claims covering "a sensor probe;" Claims 13 to 22 were method claims; Claims 23 to 35 were appara-

tus claims were directed to sensor probes, adapter modules, meters, and devices. In the first Office Action, the Examiner required a restriction of the claims stating that the claims were directed to five distinct species. ('247 File History, Paper No. 3.) Nellcor responded by electing Claims 1 to 35 ('247 File History, Paper No. 4) which included apparatus claims directed to sensor probes and adapter modules, thereby surrendering the apparatus claims that covered meters. The Examiner then required an additional restriction of Claims 1 to 35 to which Nellcor responded by electing Claims 1 to 22 ('247 File History, Paper No. 5) which included apparatus claims directed to sensor probes, thereby surrendering claims that covered adapter modules. Thus, Nellcor surrendered all of its adapter module and meter apparatus claims, embodiments in which the signal transformer was located on the adapter module and on the meter.

Because Nellcor relinquished by amendment subject matter disclosed in the patent specification but not subsequently claimed, such subject matter is deemed to have been surrendered. *K–2 Corp.*, 191 F.3d at 1368. Accordingly, Nellcor cannot argue that under the doctrine of equivalents, the signal transformer can be located on the meter or the adaptor module, rather than on the patient sensors.

Because there is no genuine issue of material fact that Masimo's patient sensors do not include a signal transformer, summary judgment of noninfringement of Claim 1 is GRANTED.

### B. *Claims 2, 6, and 10*

■ If there is no infringement of the independent claims, there can be no in-

fringement of the dependent claims. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed.Cir.1989).

Thus, because Claims 2, 6, and 10 depend from, and include the limitations of, independent Claim 1, summary judgment of noninfringement of Claims 2, 6, and 10 is also GRANTED.

### C. *Claim 13*

■ Claim 13 is a method claim for facilitating compatibility between a sensor probe and a meter. ('247 Patent, Claim 13.) Masimo also argues that "Nellcor's election during prosecution to limit Claim 13 to the sensor probe embodiment" prevents Claim 13 from covering the relinquished embodiments. (Def. Masimo Corp.'s Reply Mem. in Supp. of its Mot. for Summ. J. of Non–Infringement of U.S. Patent No. 5,807,247 (" '247 Patent Reply") at 4–5.) In particular, Masimo argues that Claim 13 is limited by the prosecution history to a method involving a signal transformer on the sensor probe and that Masimo's patient sensor does not include a signal transformer. Nellcor contends that the claimed method of Claim 13 does not require any signal transformer, nor does it require that the signal transformer be located on the sensor probe. ('247 Patent Opp'n at 15.)

### 1. *Claim Construction*

As for Claim 13, Nellcor is correct in that unlike Claim 1, the claim language itself does not require that the signal transformer be located on the sensor probe.[6] ('247 Patent, Claim 13.) During prosecution, however, Nellcor limited the scope of Claim 13.

---

tus claims covering "an adapter module;" Claims 36 to 44 were apparatus claims covering "a meter;" Claims 45 to 48 were apparatus claims covering "an adapter module;" Claims 49 to 50 were apparatus claims covering "a probe adapter;" and Claims 51 to 52 were apparatus claims covering "a device." ('247 File History, Paper No. 1)

**6.** Claim 13 reads as follows:

A method for facilitating compatibility between a sensor probe operable to transmit light of a first wavelength for scattering by a tissue sample and to generate a first probe signal in response thereto, and a meter operable to receive a meter signal representative of

"The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." *Southwall Tech. v. Cardinal IG Co.*, 54 F.3d 1570, 1574 (Fed.Cir.1995).

The '247 patent prosecution history shows that Nellcor originally filed Claims 1 through 52.[7] In the first Office Action, the Examiner required a restriction of the claims stating that the claims were directed to *five* distinct species of the invention represented by Figures 2a, 3, 4, 5, and 9. ('247 File History, Paper No. 3.) The Examiner also stated the following:

> Applicant is required under 35 U.S.C. 121 to elect a *single disclosed species* for prosecution on the merits to which the claims shall be restricted if no generic claim is finally held to be allowable. Currently, *no claims are generic.*
>
> Applicant is advised that a response to this requirement must include an identi-

fication of *the species* that is elected consonant with this requirement ....
('247 File History, Paper No. 3 (emphasis added).)

Nellcor responded by electing Claims 1 to 35 as originally filed stating that "a specific embodiment of the invention upon which claims 1–35 read is shown in Figure 3." ('247 File History, Paper No. 4). The Examiner then required an additional restriction of the claims finding that "the embodiment of Figure 3 reads only on Claims 1–22 and not on Claims 1–35." ('247 File History, Paper No. 5.) Nellcor responded by electing Claims 1 to 22 as originally filed.[8] (*Id.*) Thus, Nellcor was required to limit the pending claims to a single species, which Nellcor did by limiting the pending claims to the species of the invention represented by Figure 3. Claim 13 was included in this group of elected claims and therefore is a claim of the species of the invention represented by Figure 3.[9] Accordingly, Claim 13 is limited

---

light of a second wavelength scattered by the tissue sample and to calculate a blood parameter from the meter signal using coefficients based at least in part on a value of the second wavelength, the method comprising the steps of:

> transmitting light of the first wavelength towards the tissue sample to be scattered thereby;
> detecting light of the first wavelength scattered by the tissue sample;
> generating the first probe signal in response to the detecting step;
> manipulating the first probe signal, thereby generating a transformed signal having a predetermined mathematical relationship to the first probe signal, the transformed signal being used by the meter to calculate the blood parameter using the coefficients based at least in part on the value of the second wavelength.

7. *See* n. 4 *supra.*

8. Nellcor argues that there is no explicit statement that the elected claims are limited to Figure 3 and that they may cover other embodiments. ('247 Patent Opp'n at 23.) Nell-

cor, was required, however, to elect *a single species* from of one of five species, which were represented by Figures 2a, 3, 4, 5, and 9. Because Nellcor clearly chose the species represented by Figure 3, it also follows that Nellcor elected *not* to choose any of the species represented by Figures 2a, 4, 5, and 9. Accordingly, Nellcor is precluded form arguing that Claims 13 applies to any of the embodiments represented by Figures 2a, 4, 5, and 9.

9. Nellcor argues that the restriction applied only to the apparatus and not to the method claims. (Opp'n at 23–24.) However, the Examiner's Office Action explicitly included Claim 13 among those subject to restriction ('247 File History, Paper Nos. 3 and 5) and Nellcor explicitly included Claim 13 in its election of its single species of claims ('247 File History, Paper Nos. 4 and 5). Thus, Nellcor's arguments are without merit. Moreover, the Examiner stated that there were no generic claims in the originally filed claims, and Claim 13 as issued is the same as originally filed. Thus, it is clear that the Examiner did not consider Claim 13 to be

to the species of the invention represented by Figure 3.

### 2. *Comparison of Accused Infringer's Actions with Construed Claims*

#### a. *Literal Infringement*

Claim 13 is limited to the species of the invention represented by Figure 3 which requires that the function of "manipulating the first probe signal" is performed on the sensor probe. As discussed above, it is clear that Masimo's patient sensor does not include the claimed signal transformer. Accordingly, there is no genuine issue of material fact that use of Masimo's patient sensors does not literally infringe Claim 13.

#### b. *Doctrine of Equivalents*

Because Nellcor relinquished by amendment subject matter disclosed in the patent specification but not subsequently claimed, such subject matter is deemed to have been surrendered. *K–2 Corp.*, 191 F.3d at 1368. Accordingly, Nellcor cannot argue that under the doctrine of equivalents the function of "manipulating the first probe signal" can be performed on the meter or the adaptor module rather than on the patient sensor.

Because there is no genuine issue of material fact that Masimo's patient sensors do not perform the function of "manipulating the first probe signal," summary judgment of noninfringement of Claim 13 is GRANTED.

### D. *Claims 17, 21, and 22*

If there is no infringement of the independent claims, there can be no infringement of the dependent claims. *Wahpeton,* 870 F.2d at 1553. Thus, because Claims 17, 21, and 22 depend from, and include the limitations of, independent Claim 13, summary judgment of noninfringement of Claims 17, 21, and 22 is also GRANTED.

## II. *The '136 Patent*

Nellcor also accuses Masimo of infringing or inducing infringement of Claims 1, 5, 6, 10, and 11 of the '136 patent ("the asserted '136 patent claims"). Claim 5 depends from, and includes the limitations of independent Claim 1. Claim 10 depends from, and includes the limitations of independent Claim 6.

### A. *Independent Claims 1, 6, and 11*

All of the independent claims include the limitation of removing frequency components other than those that have a frequency below the frequency of the fundamental heart rate.[10] ('136 Patent, Claims

---

generic, but instead part of the distinct species of the invention represented by Figure 3. Nellcor has not even argued that it ever challenged the Examiner's restriction, that the Examiner's grouping of the claims was incorrect, or that the Examiner's finding that no claim was generic was incorrect.

10. Claim 1 includes the limitation of "filter means for eliminating frequency components of the detected optical signal other than those that have a frequency below the frequency of the fundamental heart rate." ('136 Patent, Claim 1.) Claim 6 includes the limitation of "first filter means for eliminating the frequency components of the first optical signal other than those that are below the fundamental heart rate" and "second filter means for eliminating the frequency components of the sec-

ond optical signal other than those that are below the fundamental heart rate." ('136 Patent, Claim 6.) Claim 11 includes the limitation of "detecting a first optical signal corresponding to changes in the transmittance of the first frequency including ... transient background transmittance changes at frequencies below the heart rate," "detecting a second optical signal corresponding to changes in the transmittance of a second frequency including ... transient background transmittance changes at frequencies below the heart rate," and "processing the ... signals to obtain first and second filtered signals substantially comprising ... transient background transmittance components of the first and second detected optical signals below the heart rate frequency." ('136 Patent, Claim 11.)

**1210**

1, 6, and 11.) Nellcor argues that the claims cover filters that are based on any range of possible human heart rates. (Nellcor's Opp'n to Masimo's Mot. for Summ. J. of Non–Infringement of U.S. Patent No. 5,078,136 ("'136 Patent Opp'n") at 12). Masimo argues that the claims are limited to filters that are based on the actual patient's heart rate, and that Masimo does not infringe because its product do not filter using the actual patient's heart rate. (Mem. of P. & A. in Supp. of Masimo's Mot. for Summ. J. of Noninfringement of U.S. Patent 5,078,136 (" '136 Patent Mot.") at 2.)

### 1. Claim Construction

In the Claim Construction Order, the Court held that the term "heart rate" means "either a patient's heart rate or a number indicative of that heart rate." Claim Construction Order at 22. Clearly, the "patient's heart rate" refers to the changing heart rate of the patient being observed.

Nellcor seizes upon the second part of the claim construction, however, arguing that inclusion of "a number indicative of that heart rate" supports its argument. However, the second part of the claim construction merely clarifies that "heart rate" might refer to either a patient's heart rate, or a number used to signify the patient's heart rate, e.g., 75 beats per minute. Fundamentally, the claim construction contemplates that "heart rate" refers to the changing heart rate of the patient.[11]

This construction finds ample support in the '136 patent. Claim 1 includes the following limitation:

> filter means for eliminating frequency components of the detected optical signal other than those that have a fre-

quency below the frequency of the fundamental heart rate, thereby providing a filtered signal;

('136 Patent, Col. 23, Lns. 35–40.) If "heart rate" actually means "the possible range of human heart rates" to those of ordinary skill in the relevant art, that fact is not apparent. *See York Prods., Inc. v. Central Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1572 (Fed.Cir.1996) ("Without an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning."). Moreover, this would be a difficult position to take considering that the '136 patent specification refers to the "measured heart rate." ('136 Patent, Col. 7, Lns. 21–25 ("For one of the portions, the frequency domain corresponding to the frequency components below the range of the measured heart rate, including the background and any transient frequency components, is separated from the higher frequency components.").)

Thus, the independent claims require that the filter uses the actual patient's heart rate.

### 2. Comparison of Accused Device with Independent Claims 1, 6, and 11

#### a. Literal Infringement

■ There is no genuine dispute that Masimo's products do not use "a real-time measurement of the patient's actual heart rate" in its filtering. (Nelcor's Stmt. of Gen. Issues and Concls. of Law in Supp. of Pls.' Opp'n to Masimo's Mot. for Summ. J. of Non-infringement of U.S. Patent No. 5,078,136 at 1.) Nellcor only argues that Masimo's products "set the minimum ex-

---

11. Masimo's motion describes the asserted claims as requiring a "tunable" filter, and Nellcor vigorously asserts that "tunable" is required by neither the patent nor the Court's claim construction. ('136 Patent Opp'n at 12.) To the extent that "tunable" only means that the filter responds to the patient's then-current heart rate, Masimo's argument is correct.

pected heart rate at 25 beats per minute" and that such number "is tied to a number indicative of the patient's heart rate." ('136 Patent Opp'n at 13.) Nellcor thus contends that Masimo's products create a filtered signal that "has at least frequency components above a number indicative of a patient's heart rate eliminated." (*Id.*)

Even assuming that Masimo's products use the rate of 25 beats per minute and that the rate was selected because it was the minimum expected heart rate of any human patient, use of a predetermined number is not the same a using a number based on the actual patient's heart rate as required by the claims. Under the Court's claim construction, the DETREND1 routine, as described by Nellcor, is clearly outside the literal scope of the independent claims of the '136 patent.

Accordingly, there is no genuine issue of material fact that Masimo's does not literally infringe or induce infringement of independent Claims 1, 6, and 11.

### b. *Doctrine of Equivalents*

Even if the accused product does not literally possess each limitation of the claim, the product may still infringe if there is equivalence between the elements of the accused product and the claimed elements. *Warner–Jenkinson*, 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Although equivalence is a factual matter normally reserved for a fact finder, the trial court should grant summary judgment in any case where no reasonable fact finder could find equivalence. *See id.* at 39 n. 8, 117 S.Ct. 1040.

■ "The doctrine of equivalents prevents an accused infringer from avoiding infringement by changing only minor or insubstantial details of a claimed invention while retaining their essential functionality." *Sage Prods., Inc. v. Devon Indust., Inc.,* 126 F.3d 1420, 1424 (Fed.Cir.1997). However, "[t]he doctrine of equivalents

cannot be used to erase 'meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.' " *Conopco, Inc. v. May Dept. Stores Co.,* 46 F.3d 1556, 1562 (Fed.Cir.1994) (citations omitted). For clear limitations, the courts should not use the doctrine of equivalents to remove such limitations. *Sage Prods.,* 126 F.3d at 1425–26. "[A]s between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure." *Id.* at 1425 (citations omitted).

■ Masimo contends that "[i]f one were to conclude that filtering at a predetermined or fixed frequency is equivalent to filtering at the heart rate, the heart-rate limitation would be rendered a complete nullity." ('136 Patent Mot. at 15.) The Court agrees. No reasonable fact finder could conclude that using a filter at a predetermined and fixed frequency constitutes "changing only minor or insubstantial details" of Nellcor's claimed invention of using the claimed filter that adjusts based on the patient's heart rate. *See Sage Products,* 126 F.3d at 1424. Nellcor chose to include the clear limitation of using a filter that adjusts based on the patient's heart rate, and a "skilled patent drafter would foresee the limiting potential" of claiming a filter based on the patient's heart rate. *Id.* at 1425. Accordingly, Nellcor cannot argue that under the doctrine of equivalents, "removing frequency components other than those that have a frequency below the frequency of the patient's heart rate" is equivalent to "removing frequency components other than those that have a frequency below the frequency of pre-determined rate."

Because there is no genuine issue of material fact that Masimo's DETREND1 software does not "remove frequencies

components other than those that have a frequency below the frequency of *the fundamental heart rate*," summary judgment of noninfringement of Claims 1, 6, and 11 is GRANTED.

### B. *Dependent Claims 5 and 10*

If there is no infringement of the independent claims, there can be no infringement of the dependent claims. *Wahpeton*, 870 F.2d at 1553. Thus, because Claim 5 depends from, and includes the limitations of, independent Claim 1, summary judgment of noninfringement of Claim 5 is also GRANTED. Similarly, because Claim 10 depends from, and includes the limitations of, independent Claim 6, summary judgment of noninfringement of Claim 10 is also GRANTED.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Masimo's motions for summary judgment of noninfringement of the '247 patent and the '136 patent.

IT IS SO ORDERED.