**NISUS CORPORATION, Plaintiff,**

v.

**PERMA–CHINK SYSTEMS, INC., Defendant.**

No. 3:98–CV–433.

United States District Court, E.D. Tennessee.

Sept. 30, 2003.

Allan G. Altera, Merchant & Gould, Atlanta, GA, Stephen G. Anderson, Bradley H. Hodge, Knoxville, TN, William R. Johnson, Marietta, GA, Matthew D. Josephic, Nagendra Setty, Atlanta, GA, John R. Nelson, Stephen F. Roth, Westfield, NJ, Michael H. Teschner, Douglas J. Williams, Minneapolis, MN, for plaintiffs.

James N. Arning, Jr., M. Denise Moretz, Knoxville, TN, Mark S. Carlson, Inge Larish, Vanessa Lee, Paul T. Meiklejohn, Andrew F. Pratt, D. William Toone, Seattle, WA, Valerie Du Laney, Bellevue, WA, Richard W. Evans, Durham, NC, for defendants.

### *MEMORANDUM OPINION*

VARLAN, District Judge.

## I.  *Introduction*

This patent infringement action was brought by plaintiff Nisus Corporation ("Nisus") against defendant Perma–Chink Systems, Inc. ("Perma–Chink") on July 14, 1998 pursuant to the patent laws of the United States, 35 U.S.C. § 1 *et seq.* Nisus seeks a judgment that Perma–Chink is infringing on its rights under U.S. Patent No. 5,645,828 ("the '828 patent") and demands compensatory and punitive damages. On May 23, 2002, Perma–Chink brought several counterclaims against Nisus, including a claim of non-infringement and antitrust violations.

This matter is before the Court on the following: Perma–Chink's "supplemental brief in support of motion for summary judgment of non-infringement" [Doc. 348][1]; Nisus' objections to the magistrate judge's order ruling on its motion for leave to file a supplemental expert report [Doc. 363]; and Nisus' motion for consolidation [Doc. 378]. Oral argument on these motions was heard by the Court on July 25,

2003 [*see* Doc. 389]. The Court has carefully considered the entire record, including the parties' excellent briefs and arguments and the applicable law, and is of the opinion that Nisus cannot prevail on any pending issue.

Therefore, based upon the reasons set forth herein, the Court will OVERRULE Nisus' objections to the order disallowing a supplemental expert report; will GRANT summary judgment to Perma–Chink on the issue of non-infringement; and will DENY AS MOOT Nisus' request for consolidation.

## II.  *Relevant Facts*

### 1.  **Nisus' Patent**

In 1983, Richard Dunstan and Allan Dietrich formed Perma–Chink, which manufactures and sells a line of products for the log home industry. During the early 1980s, Dietrich and two Perma–Chink employees, Vincent Palmere and Stanley Galyon, invented a formulation that would later lead to the '828 patent, which involves "Methods and Compositions for Retarding and Eradicating Infestation in Trees and Tree Derived Products." In 1990, Dietrich, Palmere, and Galyon left Perma–Chink to form Nisus.

On July 8, 1997, the United States Patent and Trademark Office granted the '828 patent to Dietrich, Palmere, and Galyon. The inventors assigned their rights to the '828 patent to Nisus. Nisus manufactures and distributes an insecticide and wood preservative product called Bora–Care, which is formulated based upon the '828 patent. Subsequently, Perma–Chink developed, advertised, and sold its own insecticide and wood preservative formulation, which is embodied in a product called

---

1.  For reasons more fully set forth herein, the Court is construing this pleading as a renewed motion for summary judgment.

Shell–Guard. Nisus alleges that Perma–Chink's Shell–Guard product infringes on the '828 patent and therefore on Bora–Care.

## 2. Nisus' Patent Claims

The '828 patent makes fifteen claims about its method for preventing or eradicating the infestation of tree-derived products. The active ingredient in the formulation described in the '828 patent is boron, which functions as both a pesticide and preservative. In order for a product based on the patented formulation to function as designed, the boron must penetrate and diffuse throughout the wood. Only claims 1 and 2 of the '828 patent are independent, while the remaining claims are dependent on claims 1 and 2.

Claims 1 and 2 outline a two-step process for diluting a chemical composition and applying it to the surface of a tree-derived product, as follows:

1. A method of preventing or eradicating an infestation in a tree derived product comprising the steps of:

diluting an environmentally safe composition which is the product of a mixture or the reaction product of of [sic] a mixture of alkylene glycols including at least one short chain polyalkylene glycol having an average molecular weight of between about 200 and about 400, and at least one short chain alkylene glycol; and boron provided as a glycol soluble boron containing composition in an amount effective to prevent or eradicate infestation with water in an amount of between about 1 part boron to about 8.8 parts water to about 1 part boron to about 85.5 part water; and applying said composition to a surface of said tree derived product, wherein said composition exhibits *improved depth of penetration.*

2. A method of preventing or eradicating an infestation in a tree derived product comprising the steps of:

applying to said tree product an environmentally safe composition which is the product of a mixture or reaction product of at least one short chain alkylene glycol, a glycol soluble boron containing compound in an amount effective to prevent or eradicate infestation and at least one short chain polyalkylene glycol having an average molecular weight of between about 200 and about 400, wherein said composition exhibits *improved depth of penetration.*

[*see* U.S. Patent No. 5,645,828 at pp. 30–31 attached to Doc. 1 (emphasis added)].

Nisus contends Perma–Chink's Shell–Guard product infringes the two independent claims and six of the dependent claims—specifically claims 1 through 4 and 9 through 12. As emphasized above, both claims 1 and 2 of the '828 patent require that the formulation exhibit "improved depth of penetration." Since all of the other claims are dependent upon claims 1 or 2, there must be a showing that Shell–Guard exhibits "improved depth of penetration" in order to infringe the '828 patent. *See Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir.1989)("[i]t is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed").

## 3. Court's Construction of Nisus' Patent Claims

The parties requested that the Court construe the claims at issue pursuant to *Markman v. Westview Instruments, Inc.* (*"Markman II"*), 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The Honorable Curtis L. Collier, the United States District Judge originally assigned to this

case, held a *Markman* hearing on October 2, 2001 and issued a memorandum opinion construing the claims on January 14, 2002. The Court construed the term "improved depth of penetration," the only remaining claim at issue, to mean "improved cross-grain penetration in comparison to the Japanese prior art" [*see* Doc. 215 at p. 12].

### III. *Nisus' Objections to Disallowance of Supplemental Expert Report*

#### 1. Standard of Review

Nisus has filed objections to the magistrate judge's order ruling on its motion for leave to file a supplemental expert report [Doc. 363]. In considering these objections, the Court is mindful that it shall only modify or set aside the magistrate judge's order where it has been shown to be "clearly erroneous or contrary to law." *See* Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A). Given this standard of review, the Court finds that the magistrate judge's order [Doc. 355] is neither clearly erroneous nor contrary to law, and therefore Nisus' objections to the disallowance of a supplemental expert report will be overruled.

#### 2. Analysis

In order to provide the proper context for considering Nisus' objections, a discussion of the relevant procedural and factual history leading up to these objections is necessary.[2] On April 25, 2001, the parties exchanged their expert reports pursuant to Fed.R.Civ.P. 26(a)(2)(B). Nisus disclosed Dr. Clarence McDaniel's expert report, which set out the methodology he used to reach his ultimate opinion that Perma–Chink's Shell–Guard product infringes on Nisus' Bora–Care product. Dr.

McDaniel specifically concluded that Shell–Guard satisfied the "improved depth of penetration" claim limitation of the '828 patent. In order to measure the cross-grain penetration of boron into wood, Dr. McDaniel harkened back to the curcumin testing methodology[3] used by Stanley Galyon, one of the inventors of the '828 patent. Galyon had submitted a Declaration to the United States Patent and Trademark Office in support of the '828 patent, and therein Galyon explained that he used a 10% solution of curcumin as his methodology for testing the boron penetration of Nisus' Bora–Care product in comparison to the Japanese prior art.

On May 25, 2001, discovery closed pursuant to the controlling scheduling order [*see* Doc. 77]. The Court's *Markman* order, which was issued on January 14, 2002, stated that the Galyon Declaration revealed two important implications: "(1) the '828 composition exhibits 'improved penetration depth' over the prior Japanese art and (2) penetration depth measures cross-grain action" [*see* Doc. 215 at p. 10]. Based upon this evidence, which was included in the patent's prosecution history, the Court concluded that the term "improved depth of penetration" means "improved cross-grain penetration in comparison to the Japanese prior art" [*see id.* at p. 12].

On March 29, 2002, pursuant to Fed. R.Evid. 702, Perma–Chink filed a motion to exclude the opinions and testimony of Dr. McDaniel as to whether Shell–Guard exhibits the "improved depth of penetration" claim limitation of the '828 patent [*see* Docs. 244–45, 260]. In accordance with *Daubert v. Merrell Dow Pharmaceu-*

---

**2.** This discussion will also prove useful in considering Perma–Chink's motion for summary judgment, which will be addressed below.

**3.** The curcumin test is "[a] colorimetric test that will give a visual indication of boron penetration or the presence of borates at a certain concentration or both" [*see* Doc. 331 at p. 59].

*ticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), United States Magistrate Judge C. Clifford Shirley, Jr. conducted a hearing, issuing a report and recommendation on June 17, 2002 that the motion to exclude should be granted [*see* Docs. 324, 331]. After Nisus filed objections to Judge Shirley's report and recommendation, Judge Collier conducted a *de novo* review and issued a memorandum opinion on July 5, 2002 [*see* Doc. 343]. The Court concluded that Dr. McDaniel would be excluded from testifying about his ultimate opinion of infringement "[b]ased on his complete lack of experience with penetration tests prior to litigation, his failure to follow the generally accepted methodology, his reliance on a scheme of measurement that is inherently imprecise under the circumstances, his failure to photodocument his measurements, and his failure to conduct a reproducible and thus reviewable procedure" [*see id.* at pp. 14–15].

In its *Daubert* opinion, the Court found that the curcumin test utilizing a 10% curcumin solution is a generally accepted method to detect the presence and penetration of boron in wood [*see id.* at p. 12]. The Court noted that the American Wood Preservers' Association ("AWPA") accepted this methodology and that Galyon used this methodology in testing the depth of penetration of boron in Bora–Care in comparison to the Japanese prior art [*see id.* at pp. 3–4]. As one of the reasons for excluding Dr. McDaniel's opinions and testimony, however, the Court focused on the fact that Dr. McDaniel employed a curcumin test utilizing a 1% curcumin solution [*see id.* at pp. 9, 12]. Dr. McDaniel professed that it was impossible to make the 10% curcumin solution prescribed by the AWPA and used by Galyon, which the Court found to be "disturbing" [*see id.* at pp. 12, 14]. The Court noted that Dr. Joseph Karchesy, the expert for Perma–Chink, was able to conduct his testing with a 10% curcumin solution that he made [*see id.* at p. 9].

The Court further observed in its *Daubert* opinion that the AWPA curcumin test did not necessarily provide a reliable method for measuring depth of penetration of boron in wood [*see id.* at p. 12]. Dr. McDaniel used an ordinary ruler to take measurements of the depth of penetration of boron in the wood samples that were first brushed with Shell–Guard, then cut open, and then sprayed with the curcumin solution of 1% [*see id.* at p. 8]. Dr. McDaniel did likewise with the wood samples treated with the Japanese prior art [*see id.*]. The Court found that when Dr. McDaniel made his measurements, he used precise millimeter marks of one, two, or three millimeters without recording when the measurement was actually more or less than the precise millimeter mark [*see id.* at pp. 8, 13]. Concluding that such a procedure leads to a troubling potential rate of error, the Court stated that a digital caliper would appear to provide the only reliable way to measure depth of penetration in this particular curcumin test due to the very small measurements involved [*see id.* at pp. 13–14]. In a footnote, the Court commented that "[i]t appears clear the best test in this case would have been the Azomethine–H test, which uses mass spectroscopy instead of chemical reagents to measure boron penetration" [*see id.* at p. 14 n. 11].

Because the Court not only questioned the curcumin test as a reliable measure of depth of penetration but also commented that the Azomethine–H test appears to be the best test in this case, Nisus filed a motion for leave to file a supplemental expert report on July 18, 2002 [*see* Doc. 347 at p. 1]. Nisus argued that the Court's statements amounted to a supplemental *Markman* opinion, as the Court had previously indicated that construction of the

term "improved depth of penetration" was linked to the Galyon Declaration setting out the curcumin test as the proper methodology for measuring the penetration of boron in the wood [*see id.* at pp. 4–5]. Therefore, Nisus sought new depth of penetration testing by new experts encompassing the following protocol: conducting the Azomethine–H test and then repeating the AWPA curcumin test as verification to the Azomethine–H test [*see id.* at p. 6].

On July 29, 2002, Perma–Chink filed its opposition to Nisus' motion for leave to file a supplemental expert report, arguing that Nisus was blaming the Court for its expert problems by contending that Nisus was induced to rely upon the Court's selection of the curcumin test as the exclusive method to measure the "improved depth of penetration" claim limitation [*see* Doc. 350 at p. 1]. Perma–Chink pointed out that the Court's *Markman* opinion, which only made reference to the Galyon Declaration, did not even mention the curcumin testing methodology itself, did not dictate or even suggest how to conduct testing in order to determine depth of penetration, and certainly did not enshrine the curcumin test as the exclusive means for determining depth of penetration [*see id.* at pp. 2, 11].

Pursuant to the authority of 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72, Judge Shirley issued an order denying Nisus' motion for leave to file a supplemental expert report on October 4, 2002 [*see* Doc. 355 at p. 17]. Judge Shirley concluded that his recommendation and Judge Collier's decision to exclude Dr. McDaniel's expert testimony were based on concrete findings that Dr. McDaniel's opinions and methodology were unreliable, not on an outright dismissal of the curcumin test itself as unreliable [*see id.* at pp. 5–6]. In doing so, Judge Shirley highlighted his finding that the curcumin test might have been appropriate "if administered properly and in accordance with the set standards in the scientific community" as well as the Court's finding that the AWPA curcumin test, which is based on a 10% curcumin solution, was a generally accepted method to detect the presence of boron in wood [*see id.* at p. 5].

On October 14, 2002, Nisus filed the pending objections to Judge Shirley's order on its motion for leave to file a supplemental expert report [*see* Doc. 363].[4] On October 24, 2002, Perma–Chink filed its timely response to Nisus' objections to the magistrate judge's order denying leave to file a supplemental expert report [*see* Doc. 366].[5]

The clearly erroneous standard found in Fed.R.Civ.P. 72(a) and 28 U.S.C. § 636(b)(1)(A) has been explained by a Tennessee district court, relying on the Sixth Circuit, as follows:

> A judicial finding is deemed to be clearly erroneous when it leaves the reviewing court with 'a definite and firm conviction that a mistake has been com-

**4.** Nisus' objections largely repeat the same arguments that it made in its motion for leave to file a supplemental expert report.

**5.** In its initial objections [*see* Doc. 363] and its reply to Perma–Chink's response to its objections [*see* Doc. 368], Nisus merely refers to Fed.R.Civ.P. 72; noticeably absent is a recitation of the appropriate standard. In addition, the Court notes for the record that Nisus has attempted to supplement its objections to the magistrate judge's order by filing another brief on September 19, 2003 [*see* Doc. 395].

This supplemental brief was filed almost one year after Nisus filed its initial objections. Even if the Court were to consider the merits of this supplemental brief, which points to new evidence that the AWPA has changed its curcumin depth of penetration testing standard from a 10% solution to a 1% solution, the Court would find that such evidence does not overcome the overwhelming proof that Dr. McDaniel's opinions were unreliable for a number of other reasons [*see* Memo. Op. at p. 6, *citing* Doc. 343 at pp. 14–15].

mitted.' *Heights Community Congress v. Hilltop Realty, Inc.,* 774 F.2d 135, 140 (6th Cir.1985). Under the clearly erroneous standard, a court reviewing a magistrate judge's order should not ask whether the finding is the best or only conclusion that can be drawn from the evidence. Further, this standard does not permit the reviewing court to substitute its own conclusion for that of the magistrate judge. Rather, the clearly erroneous standard only requires the reviewing court to determine if there is any evidence to support the magistrate judge's finding and that the finding was reasonable. *Id.*

*Tri–Star Airlines, Inc. v. Willis Careen Corp. of Los Angeles,* 75 F.Supp.2d 835, 839 (W.D.Tenn.1999)(emphasis added). As will be seen below, Nisus completely fails to demonstrate how Judge Shirley's order is clearly erroneous or contrary to law.

Nisus' first objection is that Judge Shirley misinterpreted Nisus' request to file a supplemental expert report as an attempt to rehabilitate or reconsider his *Daubert* decision with respect to Dr. McDaniel's expert reporting on the curcumin test [*see* Doc. 363 at pp. 1–2]. Nisus contends that Judge Shirley improperly "focus[ed] on Dr. McDaniel's actions resulting in his exclusion, as opposed to the issue Nisus was attempting to address, namely, the District Court's questioning the reliability of the curcumin test and noting that the Azomethine–H test—which neither party used—is best for depth of penetration testing" [*see id.* at p. 2].

However, the Court is left with the definite and firm conviction that Judge Shirley did not misinterpret Nisus' motion. Judge Shirley accurately described Nisus' request and the basis for the request as follows:

> The plaintiff's Motion seeks leave to file a Supplemental Expert Report. The plaintiff's basis for this request is that the plaintiff (and arguably both parties and the court) would benefit from having an expert use a different methodology to measure depth of penetration, from that previously used.

[*see* Doc. 355 at p. 1]. Judge Shirley also accurately summarized Nisus' contentions in detail, stating that "the plaintiff argues that Judge Collier's questioning of the curcumin test and suggestion of a better test, constitutes a 'shift' by the District Court" [*see id.* at pp. 1–2].

Furthermore, the Court finds that Judge Shirley correctly focused on Dr. McDaniel's actions and omissions resulting in his exclusion because Nisus persisted in mischaracterizing the Court's *Daubert* opinion as a supplemental *Markman* decision that rejected the curcumin test as a reliable means to measure depth of penetration and embraced the Azomethine–H test as the only reliable means to measure depth of penetration. The Court's *Daubert* opinion found that "the curcumin test utilizing a ten percent curcumin solution— that is, the AWPA test—is a generally accepted method to detect the presence of boron in wood" [*see* Doc. 343 at p. 12]. The Court's comment in a footnote that the Azomethine–H test would be the best test to measure boron penetration [*see id.* at p. 14, fn. 11] was not an invitation to reopen the expert proof with regard to depth of penetration testing. Therefore, the Court finds that Judge Shirley's comments about the unreliability of Dr. McDaniel's methodology and not the curcumin test itself were necessary to address Nisus' request to file a supplemental expert report.

The second objection by Nisus resurrects the argument that the Court's *Daubert* opinion casts doubt on the reliability of the curcumin test that both parties used [*see* Doc. 363 at p. 3]. Nisus specifically argues that the Court's *Daubert* opinion

and Judge Shirley's order reach different conclusions in part regarding the reliability of the curcumin test [*see id.* at p. 4]. For instance, Nisus points out that the Court's *Daubert* order embraced the Azomethine–H test as being the best and openly questioned the reliability of the curcumin test to perform depth of penetration testing by noting that "the line marking penetration is generally jagged," "multiple measurements must be taken and then averaged," and "there is no standard protocol for taking these measurements" [*see id.* at pp. 4–6]. In contrast, Nisus says that Judge Shirley's order finds no reliability issues with the curcumin test if using standard procedures or any such issues are resolved by using a digital caliper [*see id.* at pp. 5–6].

The Court concludes that Judge Shirley properly analyzed this issue and that he did so without any inconsistency with the Court's *Daubert* opinion. Judge Shirley acknowledged that the Court's *Daubert* opinion questioned whether the curcumin test itself was a reliable measure of depth of penetration and further commented that the Azomethine–H test would have been the best test [*see* Doc. 355 at p. 5]. However, Judge Shirley then noted that the Court's *Daubert* opinion found "the curcumin test utilizing a ten percent curcumin solution—that is, the AWPA test—is a generally accepted method to detect the presence of boron in wood" [*see id.*]. Judge Shirley's reference to his report and recommendation that the curcumin test might have been appropriate "if administered properly and in accordance with the set standards in the scientific community" [*see id.*] is not inconsistent. In fact, both orders find that the AWPA curcumin test, which is based on a 10% curcumin solution, is the proper and accepted way to conduct such testing, and therefore Dr. McDaniel failed to perform a generally accepted test when he used a 1% curcumin solution to test Shell–Guard against the Japanese prior art.

Nisus' remaining three objections can be addressed together because they are interrelated. Nisus' third objection is that the law of the Federal Circuit, not the Sixth Circuit should control the supplemental expert report issue [*see* Doc. 363 at p. 6]. The fourth objection is that Nisus' citation of *Loral Fairchild Corp. v. Victor Co.*, 911 F.Supp. 76 (E.D.N.Y.1996), is the most relevant authority that either party cited [*see id.* at p. 7]. Nisus' fifth objection is that *Weisgram v. Marley Co.*, 528 U.S. 440, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000), and its subsequent line of decisions, *Pride v. BIC Corp.*, 218 F.3d 566 (6th Cir.2000) and *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244 (6th Cir.2001), are inapplicable to the facts of this case [*see id.* at p. 9].

Nisus cites *Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1382 (Fed.Cir. 2002), in support of its position that Federal Circuit law should apply because the expert testing issues necessarily require an understanding of the distinctive characteristics of patent infringement law [*see id.* at p. 6]. Nisus relies upon specific language from *Fiskars* that Federal Circuit law is used to review a district court's Rule 60(b) ruling because a procedural issue that is itself not a substantive patent law issue may be governed by Federal Circuit law if the issue pertains to patent law and bears an essential relationship to matters committed to its exclusive statutory control or jurisprudential responsibilities [*see id.* at p. 6].

Initially, the Court observes that Nisus' reliance upon *Fiskars* is misplaced because the present posture of this patent case is unrelated to Fed.R.Civ.P. 60(b) issues; on the other hand the instant case involves supplemental expert reports, an issue about which *Fiskars* offers no guidance.

Furthermore, the Court specifically finds that Nisus' motion to file a supplemental expert report is a procedural evidentiary matter that does not turn on a substantive patent law matter. Thus, the law of the Sixth Circuit as opposed to the Federal Circuit applies to resolve the issue. *See Union Pacific Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692–93 (Fed.Cir.2001)(where Federal Circuit applied law of the Fifth Circuit, the circuit in which the district court sat, to determine the procedural evidentiary issue of whether the district court abused its discretion by admitting testimony of witnesses who had not been qualified as experts); *see also Midwest Industries, Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir.1999)(where Federal Circuit stated that it generally applies the law of the circuit in which the district court sits on nonpatent issues); *Odetics, Inc. v. Storage Technology Corp.*, 185 F.3d 1259, 1276 (Fed.Cir.1999)(where Federal Circuit stated that it applies law of regional circuit where evidentiary matters are procedural and not unique to patent law). Accordingly, it was not error for Judge Shirley to reject *Loral* and rely upon *Weisgram* and its progeny in support of his decision to deny Nisus leave to file a supplemental expert report, as will be demonstrated in more detail below.

In spite of Nisus' insistence that Federal Circuit law applies to the supplemental expert report issue, Nisus acknowledges that it has failed to locate any Federal Circuit cases directly on point and instead contends that *Loral Fairchild Corp. v. Victor Co.*, 911 F.Supp. 76 (E.D.N.Y.1996), is case with the "most precedential value" [*see* Doc. 363 at p. 7]. According to Nisus, the *Loral* decision supports its position that supplemental expert disclosures are appropriate where the Court has changed the posture of the case by stating that the Azomethine–H test is the best method to measure depth of penetration as opposed

to the curcumin test used by the parties [*see id.*].

The Court is in complete agreement with Judge Shirley's legal analysis of this issue. First, Judge Shirley was correct that *Loral* is a district court decision from New York that has no binding effect upon this Court despite Nisus' insistence [*see* Doc. 355 at p. 10]. Second, Judge Shirley properly found that *Loral* does not stand for the proposition urged by Nisus, that is to allow additional discovery, including supplemental expert reports, after the Court construes a patent's claim limitation [*see id.* at pp. 9–10]. Third, as found by Judge Shirley, *Loral* actually supports the position that the Court must police a case carefully so that a "virtual beginning over of the 'trial process, including discovery and deposition [does not begin] anew'" and thereby prejudice the other party [*see id.* at p. 10, *quoting Loral*]. Fourth, Judge Shirley correctly concluded that *Loral* does not stand for the proposition that a party whose expert has been disqualified under *Daubert* is entitled to "perform new and different tests with new and different experts and to start expert disclosure, discovery, and depositions anew" [*see id.* at p. 10].

■ Nisus also criticizes Judge Shirley's concern that a complete reopening of expert discovery would occur if it were allowed to file a supplemental expert report and maintains that the scope of its request would be limited [*see* Doc. 363 at p. 8]. However, the Court agrees with Judge Shirley and notes that Nisus' proposed scope is really not so limited. In addition to permitting AzomethineH testing to be conducted, Nisus desires to have the curcumin testing based upon the AWPA prescribed method to be repeated by a new expert as verification to the additional testing [*see* Doc. 347 at pp. 6–7]. This is an unabashed attempt to remedy the deficien-

cies in Dr. McDaniel's opinions and testimony, which the Court will not allow at this juncture of the litigation.

In denying Nisus' request to file a supplemental expert report, Judge Shirley relied upon the following seminal cases: first, *Weisgram v. Marley Co.*, 528 U.S. 440, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000), for the proposition that a party may not supplement expert testimony after losing a *Daubert* challenge to its expert [*see* Doc. 355 at p. 10]; second, *Pride v. BIC Corp.*, 218 F.3d 566 (6th Cir.2000), where a plaintiff was denied the right to submit additional expert testimony after its expert was disqualified [*see id.* at p. 12]; and third, *Nelson v. Tennessee Gas Pipeline*, 243 F.3d 244 (6th Cir.2001), which also denied a plaintiff's request to supplement to obtain new expert testimony after a *Daubert* loss [*see id.* at p. 13]. Judge Shirley found that in addition to Nisus relying upon the obscure and inapposite district court decision of *Loral,* Nisus failed to acknowledge the applicable Supreme Court and Sixth Circuit authority on the issue [*see id.* at p. 13]. Judge Shirley specifically stated: "While the plaintiff's failure to even cite these cases directly dealing with this issue from this jurisdiction may speak volumes as to the legal merit of the plaintiff's motion, the plaintiff's blanket statement in its reply brief that these cases and legal authority are 'wholly inapplicable here'[6] is almost more baffling" [*see id.* at p. 13].

This background provides a framework for considering Nisus' final objection that both experts used testing methodology of questionable reliability and *Weisgram v. Marley Co.*, 528 U.S. 440, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000), and its progeny only apply when a court finds the methodology of only the non-moving party to be unreliable [*see* Doc. 363 at pp. 9–10]. Nisus specifically maintains that both parties should have an opportunity to conduct additional expert discovery so that the public interest of achieving a result based upon reliable data would be safeguarded [*see id.* at pp. 2, 11]. The Court concludes that Judge Shirley did not err in applying *Weisgram, Pride,* and *Nelson* in support of rejecting Nisus' request to file a supplemental expert report. These cases clearly provide authority for Judge Shirley's decision.

Upon reflecting on the strong language in these cases, all of which Judge Shirley found persuasive, the Court likewise finds Nisus' position on this issue has no merit. In *Weisgram,* the Supreme Court stated:

> Since *Daubert,* moreover, parties relying on expert evidence have had notice of the exacting standards of reliability such evidence must meet. It is implausible to suggest, post *Daubert,* the parties will initially present less than their best expert evidence in the expectation of a second chance should their first try fail. We therefore find unconvincing Weisgram's fears that allowing courts of appeals to direct the entry of judgment for defendants will punish plaintiffs who could have shored up their cases by other means had they known their expert testimony would be found inadmissible.

528 U.S. at 455–56, 120 S.Ct. 1011 (citations omitted). The Sixth Circuit in *Nelson* agreed with *Weisgram:* "We likewise find that fairness does not require that a plaintiff, whose expert witness testimony has been found inadmissible under *Daubert,* be afforded a second chance to marshal other expert opinions and shore up his

**6.** As Judge Shirley also acknowledged, it is incongruous that Nisus maintains these three cases are inapplicable while conceding that *Weisgram* is "seminal" in its reply brief in support of its motion for leave to file a supplemental expert report [*see* Doc. 351 at p. 5; *see also* Doc. 355 at p. 11].

case before the court may consider a defendant's motion for summary judgment." 243 F.3d at 250. Furthermore, in *Pride*, a case arising out of this very district, the Sixth Circuit agreed with the Honorable James H. Jarvis that a plaintiff's attempt to submit additional expert testimony was a "transparent attempt to reopen the *Daubert* hearing now that the weaknesses in [Pride's] expert testimony have been pointed out." 218 F.3d at 579. Given this overwhelming authority, Judge Shirley did not err in refusing to allow Nisus to reincarnate its expert proof.

Nisus further argues that Perma–Chink's challenge of Nisus' expert under *Daubert* was dilatory because Nisus did not receive adequate "notice" about the challenges to the testing protocol being used, which is a relevant consideration under *Weisgram* and its progeny [7] [*see* Doc. 363 at p. 11]. Nisus relies upon the following language from *Weisgram* in support of its position: "In this case, for example, although [plaintiff] was on notice every step of the way that [defendant] was challenging its experts, he made no attempt to add or substitute other evidence" [*see id., quoting Weisgram*]. Therefore, Nisus contends that *Weisgram* is distinguishable from the facts of this case because Perma–Chink did not put Nisus "on notice every step of the way" that it would challenge its expert [*see id.* at pp. 9, 11]. Nisus specifically argues that Judge Shirley's analysis that such notice is "irrelevant" constitutes legal error [*see id.* at pp. 12–13]. Nisus also submits that Judge Shirley's finding that Nisus had ample opportunity to respond to Perma–Chink's challenges is an incorrect conclusion [*see id.* at p. 13].

■ The Court first observes that Judge Shirley did not find the notice issue to be "irrelevant" as characterized by Nisus. Rather, Judge Shirley found that "the mentions of notice to the opposing party in *Nelson* and *Weisgram* were surplusage and simply provided additional justification for the results in those cases" [*see* Doc. 355 at p. 14]. The Court concludes that Judge Shirley's findings on this issue do not constitute legal error. Furthermore, the Court notes that it is well settled that "[d]istrict courts have broad discretion to exclude untimely disclosed expert-witness testimony." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir.2000) (citations omitted). The Court agrees with Judge Shirley that Nisus had ample opportunity to respond to Perma–Chink's expert challenges. Considering Nisus' position that Perma–Chink did not raise the contention that the curcumin test was suspect until April 19, 2002 when it filed its reply brief in support of Dr. McDaniel's exclusion [*see* Doc. 363 at p. 14], two points must be understood: first, the Court excluded Dr. McDaniel from testifying based upon his failure to conduct the curcumin test properly,[8] not because the curcumin test was inherently unreliable, and second, Nisus could have sought leave to file a supplemental expert report long before receiving two adverse rulings under *Daubert*.

As demonstrated above, the Court has given careful consideration to Nisus' objections to Judge Shirley's order on its motion for leave to file a supplemental expert report, as well as the factual and procedural history leading up to Nisus' objections. In light of the standard set forth in Fed. R.Civ.P. 72, the Court finds that Judge Shirley's order is well-reasoned and specifically holds that it is neither clearly erroneous nor contrary to law. Moreover, the

---

7. As pointed out by Judge Shirley, Nisus now appears to be arguing that these "wholly inapplicable" cases are now "applicable" on the issue of notice [*see* Doc. 355 at p. 14].

8. Actually, as early as May 29, 2001, Perma–Chink filed Dr. Karchesy's rebuttal expert report, which criticized Dr. McDaniel for the way he "manipulates his numbers."

Court readily concludes that Judge Shirley had ample proof to support his findings. Accordingly, Nisus' objections will be overruled in their entirety and Judge Shirley's order will be affirmed in its entirety.

### IV. *Perma–Chink's Motion for Summary Judgment of Non–Infringement*

#### 1. Standard of Review

Under Fed.R.Civ.P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing that there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Id.* at 249, 106 S.Ct. 2505. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. There must be some probative evidence from which the jury could reasonably find for the non-moving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Id.* at 251–52, 106 S.Ct. 2505.

Patent cases are subject to summary judgment just as are other cases. *See Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1561 (Fed.Cir. 1988) ("It is no longer debatable that the issues in a patent case are subject to summary judgment"). In light of this standard of review, the Court finds that Nisus has failed to establish that a genuine issue of material fact exists and therefore Perma–Chink is entitled to summary judgment of non-infringement.

#### 2. Analysis

In order to fully analyze the pending issues, it is necessary to consider the procedural and factual history preceding Perma–Chink's filing of its most recent supplemental brief in support of motion for summary judgment of non-infringement [*see* Doc. 348]. In August 2001, Perma–Chink moved for summary judgment of non-infringement of the "improved depth of penetration" limitation in all asserted claims [*see* Docs. 168, 169]. As set forth in the Court's claim construction order, this claim limitation requires proof that Shell–Guard exhibits "improved cross-grain penetration in comparison to the Japanese prior art" [*see* Doc. 215 at p. 12]. Perma–Chink therefore based its initial summary judgment motion on its position that the Shell–Guard depth of penetration measurements reported by Nisus' expert, Dr.

McDaniel, were less than the Japanese prior art penetration measurements reported in the Declaration of Stanley Galyon in support of the '828 patent. Alternatively, Perma–Chink asserted that even if Mr. Galyon's measurements were ignored, Nisus had failed to offer admissible evidence of Shell–Guard's alleged "improved depth of penetration" because Dr. McDaniel's methodology was unreliable and thus inadmissible under Fed.R.Evid. 702.

On May 20, 2002, the Court issued a memorandum opinion denying Perma–Chink's motion for summary judgment of non-infringement [see Doc. 278]. The basis for the Court's denial was proof that Dr. McDaniel had "concluded—based on his interpretation of his own tests, the testing data compiled by Stanley Galyon and submitted to the patent examiner, and Defendant's admissions—the penetration of Shell–Guard was improved over the compositions of the Japanese reference" [see id. at p. 4]. The admissions to which the Court was referring warrant some elaboration. On April 27, 2000, Perma–Chink filed answers to requests for admission propounded by Nisus pursuant to Fed.R.Civ.P. 36 [see Exhibit A attached to Doc. 238]. The following two admissions are at issue:

46. Admit that Perma–Chink performed internal testing regarding the penetration and diffusion capabilities of Nisus' Bora–Care product and the Shell–Guard product, and based on that testing, Shell–Guard had greater penetration and diffusion of boron into the wood or wood product being tested.
Response: Admit.

47. Admit that Perma–Chink performed internal testing regarding the penetration and diffusion capabilities of Nisus' Bora–Care product and the Shell–Guard product, and based on that testing, Shell–Guard had greater penetration and diffusion of the active ingredient into the wood or wood product being tested.
Response: Admit.
[See id.].

To the extent that Perma–Chink challenged the accuracy of Dr. McDaniel's conclusions and his methodology, the Court found that Perma–Chink was highlighting questions of fact about which there were genuine disputes [see id. at pp. 4–5]. At that time, the Court also stated "[i]n the context of the present motion for summary judgment ... the Court finds insufficient grounds on which to conclude Dr. McDaniel's testimony is too unreliable to be considered" [see id. at p. 5 n. 1]. In referring Perma–Chink's March 29, 2002 motion to exclude the opinions and testimony of Dr. McDaniel under Daubert to Judge Shirley, however, the Court acknowledged: "... the resolution of Defendant's motion could alter its assessment of the reliability of Dr. McDaniel's testimony. If it does, the Court will act accordingly." [See id.]. As mentioned above, on July 5, 2002, the Court agreed with relevant portions of Judge Shirley's report and recommendation, holding that Dr. McDaniel's underlying methodology was not reliable under Daubert so that his opinions and testimony with regard to whether Shell–Guard exhibits the "improved depth of penetration" claim limitation of the '828 patent should be excluded [see Doc. 343].

Based upon the Court's pronouncement that it would "act accordingly" if Dr. McDaniel's testimony were determined to be unreliable and the Court's subsequent determination that Dr. McDaniel's expert opinions and testimony were excludable under Daubert, Perma–Chink filed a "supplemental brief in support of motion for summary judgment of non-infringement" [9] arguing there is no genuine issue of mate-

9. As noted at the beginning of this memoran-    dum opinion, the Court is construing this

rial fact on the issue of non-infringement of the "improved depth of penetration" limitation in all asserted claims [*see* Doc. 348 at pp. 1–2]. In support of its renewed motion for summary judgment of non-infringement, Perma–Chink first contends that Dr. McDaniel's test results are not independently admissible in that his data is the fruit of his unreliable methodology [*see id.* at p. 3]. Next, Perma–Chink argues that the test data compiled by Mr. Galyon coupled with Perma–Chink's admissions is not independently admissible to prove infringement [*see id.*]. As pointed out by Perma–Chink, Dr. McDaniel relied upon Perma–Chink's admissions in concluding that one could deduce that Shell–Guard penetrates deeper than the Japanese prior art because Mr. Galyon had shown in this Declaration that Bora–Care penetrates deeper than the Japanese prior art [*see id.*]. However, Perma–Chink underscores the fact that Nisus never requested an admission that Shell–Guard had "improved depth of penetration" over Bora–Care; rather, Nisus only sought an admission that Shell–Guard had "greater penetration and diffusion of boron" over Bora–Care [*see id.* at p. 4]. Perma–Chink further contends that Nisus' marketing literature amounts to an admission that the phrase "greater penetration and diffusion of boron" is not synonymous with "improved depth of penetration," and therefore Nisus should not be permitted to confuse the jury by entering Perma–Chink's admissions into evidence [*see id.* at pp. 4–5]. Finally, Perma–Chink asserts that the "internal testing" that is the subject of its admissions was only performed for marketing and product purposes and no actual measurements are alleged to have been taken or reported [*see id.* at p. 5].

In response to Perma–Chink's revival of its motion for summary judgment, Nisus argues that it falls short of the high standards attendant with obtaining such relief and must be denied [*see* Doc. 349 at p. 1]. First, Nisus points out that Perma–Chink's admissions that its accused product Shell-Guard exhibits "greater penetration and diffusion of boron" are "conclusively established" under Fed.R.Civ.P. 36(b) [*see id.* at p. 1–2]. Second, Nisus contends that Perma–Chink's admissions, standing alone, require that summary judgment be denied [*see id.* at p. 2]. Given that Perma–Chink's admissions are binding, Nisus argues that the Court cannot determine as a matter of law that "greater penetration and diffusion of boron" does not equal "improved depth of penetration" of boron [*see id.* at pp. 2–3]. According to Nisus, a genuine issue of fact exists as to whether the two phrases are synonymous, and a fair minded jury could determine that a product that exhibits "greater penetration" also displays "deeper penetration" [*see id.* at p. 3]. In support of this position, Nisus points to Perma–Chink's expert testimony that Mr. Gaylon's tests "showed that one of the formulations penetrated better than the other one" [*see id.*]. If Perma–Chink's expert uses the term "better" to be synonymous with "improved" or "deeper," then Nisus suggests "greater" must also be considered to encompass "improved" or "deeper" penetration [*see id.*]. Finally, Nisus argues that the Court should delay ruling on the revived summary judgment motion until Nisus' pending motion to compel discovery on certain photographic evidence of penetration is resolved and until additional expert testing using the Azomethine–H test is completed [10] [*see id.* at pp. 4–5].

supplemental brief as a renewed motion for summary judgment, the Court having previously denied Perma–Chink summary judgment when Dr. McDaniel's expert testimony

was still being considered to create a genuine issue of material fact.

**10.** *Of course, Nisus' argument for a delayed ruling on the basis of additional expert testing*

■ Patent infringement actions are wholly statutory. *Deepsouth Packing Co. v. Laitram Corp.,* 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972). 35 U.S.C. § 271(a) provides that:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

An infringement analysis entails two steps: "[t]he first step is determining the meaning and scope of the patent claims asserted to be infringed [and t]he second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.Cir.1995) ("*Markman I*").

■ Claim construction is a matter of law for the Court to decide. *Id.* at 979. The Federal Circuit has directed trial courts to consider three sources when construing the meaning of claim language: the claims, the specification, and the prosecution history. *Id.* Terms in the claim are generally to be given their ordinary and accustomed meaning:

> But claim construction is not philosophy; we need not wring our hands when considering the implications of a metaphysical analysis of claim terms. Instead, we need only recognize that claim construction is firmly anchored in reality by the understanding of those of ordinary skill in the art.

*K-2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1362, 1365 (Fed.Cir.1999). As previously noted, the Court has already issued a claim construction opinion [*see* Doc. 215], and the construction given to the claim

limitation "improved depth of penetration" is key in deciding the question of infringement in this case. *See K-2 Corp.,* 191 F.3d at 1362. After the Court has properly construed disputed claim language, the Court then "compares the properly construed claim to the accused device to determine, as a matter of fact, whether all of the claim limitations are present in the accused device, either literally or by a substantial equivalent." *Id.*

■■ All of the limitations of a claim must be present in an accused device for the device to literally infringe the claim. *Warner–Jenkinson Co. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 41, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997); *Southwall Techs v. Cardinal IG Co.,* 54 F.3d 1570, 1575 (Fed.Cir.1995). A determination of non-infringement is only appropriate for summary judgment where the moving party demonstrates, even when all evidence in the record is viewed in the non-movant's favor, the allegedly infringing process clearly lacks an essential limitation of the patented process. *K-2 Corp.,* 191 F.3d at 1366.

■ Absent literal infringement, a patent can still be infringed under the doctrine of equivalents. *Warner–Jenkinson Co.,* 520 U.S. at 28–29, 117 S.Ct. 1040. A determination of whether infringement under the doctrine of equivalents exists involves an objective, element-by-element inquiry. *Id.* at 40, 117 S.Ct. 1040. That inquiry should focus on whether the differences, if any, between each limitation in the patent claim and the corresponding aspect of the accused process or device are "insubstantial" in nature. *Id.; Fonar Corp. v. General Electric Co.,* 107 F.3d 1543, 1555 (Fed.Cir.1997). The Supreme Court recently voiced its concern that the

has already been addressed by the Court's decision above that a supplemental expert

report will not be permitted.

doctrine of equivalents had "taken on a life of its own, unbounded by the patent claims," and therefore its application is not allowed such broad play as to effectively eliminate an element in its entirety. *See Warner–Jenkinson Co.,* 520 U.S. at 28–29, 117 S.Ct. 1040.

As the party with the burden of proving infringement at trial, and as the non-moving party on this motion, Nisus is responsible for coming forward with evidence that, if true and accepted by the trier of fact, would support a finding of literal infringement or infringement under the doctrine of equivalents. *See SmithKline Diagnostics Inc. v. Helena Laboratories Corp.,* 859 F.2d 878, 889 (Fed.Cir.1988).

■ The Court has carefully considered and analyzed the positions of both parties on the issue of summary judgment. Viewing the evidence in the light most favorable to Nisus, as it must, the Court concludes that summary judgment is proper because the record does not support a finding that Perma–Chink's Shell–Guard product exhibits "improved depth of penetration" within the meaning of that claim limitation. The Court's claim construction order held clearly that "improved depth of penetration" means "improved cross-grain penetration in comparison to the Japanese prior art" [*see* Doc. 215 at p. 12]. There is not sufficient evidence in this record for a reasonable jury to conclude that Shell–Guard has "improved cross-grain penetration in comparison to the Japanese prior art." Hence, a jury could find neither literal nor equivalent infringement by Perma–Chink.

The Court must begin by emphasizing precisely why Judge Collier initially denied summary judgment in this case. Perma–Chink's motion for summary judgment of non-infringement was denied based upon Dr. McDaniel's testimony that the penetration of Shell–Guard was improved over the compositions of the Japanese reference [*see* Doc. 278 at p. 4]. In the *Daubert* opinion, however, Judge Collier concluded that Dr. McDaniel's opinions and testimony that Shell–Guard exhibits the "improved depth of penetration" claim limitation were unreliable and therefore must be excluded under *Daubert* [*see* Doc. 343]. In reaching this conclusion, Judge Collier also acknowledged that Nisus stipulated that Dr. McDaniel did not rely on the admissions of Perma–Chink in support of his ultimate opinion of infringement [*see id.* at p. 9 n. 9, *citing* Doc. 331 at pp. 197–98].

Because Nisus' proof of infringement based upon Dr. McDaniel's testimony has been eliminated and because Nisus is now precluded from supplementing its expert proof, the Court must look to the remaining record to determine whether Nisus has produced any evidence to prove that Shell–Guard exhibits the "improved depth of penetration" claim limitation. After doing so, the Court is compelled to conclude that the record not only is void of proof of any infringement but also in fact contains unrebutted proof of non-infringement. Therefore, the Court must "act accordingly" by granting summary judgment to Perma–Chink.

In taking this action, the Court also concludes that Perma–Chink's admissions under Fed.R.Civ.P. 36 do not create a genuine issue of material fact that would preclude summary judgment. Perma–Chink admitted that it performed internal testing of Bora–Care and Shell–Guard which indicated that Shell–Guard had "greater penetration and diffusion of boron," the active ingredient, into the wood [*see* Exhibit A attached to Doc. 238]. Based upon these admissions, Nisus insists that a genuine issue of material fact exists as to whether "greater penetration and diffusion of boron" is synonymous with the claim limitation "improved depth of penetration" [*see* Doc. 349 at pp. 2–3]. In

maintaining this position, however, Nisus wholly ignores the Court's previous determination that Shell–Guard must exhibit "improved cross-grain penetration in comparison to the Japanese prior art," which construction is critical to the infringement analysis [*see* Doc. 215 at p. 12]. The Court cannot hold that the two phrases are synonymous because the admissions only address the internal testing of Bora–Care and Shell–Guard, not Shell–Guard and the Japanese prior art. Nisus has simply not come forward with any evidence in the record to support its argument that "greater penetration and diffusion of boron" has any nexus with a comparison of the Japanese prior art. These admissions, standing alone, have no analytical value without expert proof to place them in the proper context with the Japanese prior art. As pointed out multiple times, Nisus' expert proof on this issue has now evaporated.

On the other hand, the record still contains the unrebutted proof of non-infringement through the expert testimony of Dr. Karchesy on behalf of Perma–Chink. In his rebuttal report, Dr. Karchesy stated the following opinions: "Dr. McDaniel's assertion that his test showed that Perma–Chink's product penetrated wood (across the grain) better than the composition of the Japanese prior art and thus infringes on the '828 patent, is incorrect. A review of his data (par 88), my data, and the data in the file history of the '828 patent indicates clearly that Shell–Guard does not meet the 'improved depth of penetration' limitation." [*See* Exhibit D attached to Doc. 142]. In the context of the present summary judgment record, Nisus has not presented any evidence that would over-

come Dr. Karchesy's expert testimony and opinions. Therefore, the Court cannot conclude that a fair minded jury could return a verdict in Nisus' favor.

Nisus' final argument that the Court should delay ruling on the renewed summary judgment motion until Nisus has an opportunity to conduct discovery on certain photographic evidence of penetration [*see* Doc. 349 at p. 5] is also unavailing. According to Nisus, Perma–Chink produced photographs on April 23, 2002 showing "comparative penetration testing between its accused product and other boron based formulations" [*see id.* at pp. 4–5].[11] Further, Nisus states that Perma–Chink is "apparently concerned about the photographs showing its testing that involve the same subject matter as the admissions" [*see id.* at p. 4]. Nisus seeks to compel discovery on this subject because it "believes that the Japanese prior art against which the depth of penetration tests are measured is the wood designated as 'A' in the photographs" [*see id.* at p. 5 n. 9]. Nevertheless, discovery closed in this matter on May 25, 2001 [*see* Doc. 77]. In view of the history of this case, the Court will not permit discovery to be reopened. *See Lavado v. Keohane,* 992 F.2d 601, 604 (6th Cir.1993) (the scope of discovery, including whether to compel discovery, lies within the sound discretion of the trial court). Other than speculation by Nisus, there is no evidence in the record to support a finding that the photographs involve a comparison to the Japanese prior art. At the present time, Nisus can only represent that the photographs show "other boron based formulations" [*see* Doc. 349 at pp. 4–5]. For the same reasons discussed above with respect to the Fed.R.Civ.P. 36 admis-

11. Perma–Chink contends that these photographs are protected by the attorney work product doctrine and that they were inadvertently produced [*see* Doc. 300, Doc. 390]. In light of the Court's decision on Nisus' request for more discovery relating to these photographs, it is not necessary for the Court to address the issue of whether the photographs are entitled to protection. Therefore, the Court will deny these matters as moot.

sions, the Court cannot conclude that the photographs at issue involve a comparison to the Japanese prior art and thus they cannot create a genuine issue of material fact that would prevent Perma–Chink from obtaining judgment as a matter of law.

Based upon the elimination of Dr. McDaniel's opinions and testimony and the denial of any supplemental expert proof, as well as the failure of the admissions and the photographic evidence to create a genuine issue of material fact, Nisus has no competent evidence to present to a jury to support its claim that Shell–Guard exhibits the "improved depth of penetration" claim limitation of the '828 patent. Consequently, the Court finds that Nisus cannot prove literal infringement because it cannot establish that Shell–Guard embodies the essential element of "improved depth of penetration." With respect to infringement under the doctrine of equivalents, the Court likewise concludes that Nisus cannot prove this theory based upon the evidence in the record. The difference between the requirement that Shell–Guard exhibit "improved cross-grain penetration in comparison to the Japanese prior art" and the admission that Shell–Guard has "greater penetration and diffusion of boron" over Bora–Cáre is too substantial, as illustrated above. To hold otherwise would be to effectively eliminate the "improved depth of penetration" claim limitation from the '828 patent in its entirety. *See Warner–Jenkinson Co. v. Hilton Davis Chemical,* 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) (the doctrine of equivalents is not allowed such broad play as to effectively eliminate an element in its entirety). Moreover, Dr. Karchesy's testimony that Shell–Guard does not meet the "improved depth of penetration" claim limitation presents unrebutted proof of non-

infringement. Therefore, for all of these reasons, Perma–Chink is entitled to summary judgment of non-infringement in all asserted claims of the '828 patent.

## V. *Nisus' Motion for Consolidation*

Nisus filed a motion for consolidation seeking to consolidate this case with another patent suit that it filed against Perma–Chink on February 19, 2003 (3:03–CV–120) [see Doc. 378]. Nisus recently filed a third patent suit against Perma–Chink on August 4, 2003 and further relies upon this filing to support its argument for consolidation (3:03–CV–399) [see Doc. 393]. Given the Court's decision that summary judgment to Perma–Chink is appropriate, the motion for consolidation is denied as moot.

## VI. *Conclusion*

For the reasons set forth above, Nisus' objections to the magistrate judge's order ruling on its motion for leave to file a supplemental expert report [Doc. 363] will be OVERRULED; Perma–Chink's renewed motion for summary judgment of non-infringement [Doc. 348] will be GRANTED whereby the Court finds no infringement of U.S. Patent No. 5,645,828 by Perma–Chink; and Nisus' motion for consolidation [Doc. 378] will be DENIED AS MOOT. Thus, the only matters remaining for trial on January 6, 2004 will be Perma–Chink's counter-claims to the extent they have not been rendered moot by this Court's opinion.[12]

To the extent that they have not previously been ruled upon or addressed by the Court, and in view of the Court's adjudication of Perma–Chink's renewed motion for summary judgment, the following motions will be DENIED AS MOOT: Nisus' mo-

12. In light of this Court's decision, the Court expects that the parties will explore settlement through mediation or otherwise with respect to any remaining claims well in advance of the trial date.

tion to compel financial information [Doc. 288]; Perma–Chink's motion for protective order from post-discovery cut-off discovery requests [Doc. 297]; Perma–Chink's motion to compel return of work product documents [Doc. 300]; Nisus' motion to compel information about penetration testing [Doc. 303]; Nisus' motion for oral argument regarding its objections to the magistrate judge's ruling [Doc. 372]; Nisus' motion for sanctions regarding Perma–Chink's prosecution laches defense, or in the alternative, motion for leave to conduct discovery and file a summary judgment motion [Doc. 373]; Perma–Chink's motion for leave to file supplemental brief in opposition to Nisus' motion for sanctions [Doc. 376]; and Perma–Chink's motion to compel return of work product documents.